STATE of Wisconsin EX REL. V.J.H., Plaintiff-Respondent,

v.

C.A.B., Defendant-Appellant.

Court of Appeals

*No. 90–1364. Submitted on briefs January 31, 1991.—Decided June 19, 1991.*

(Also reported in 472 N.W.2d 839.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Larry D. Steen* of *Godfrey, Neshek & Worth, S.C.* of Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Dianne M. Soffa,* assistant corporation counsel.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J.   C.A.B. appeals from an order recommitting him to the Walworth county jail for failure to comply with the purge condition of a previously entered judgment of contempt requiring that in the future he make regular and timely payments of lying-in expenses and child support payments. C.A.B. contends that the trial court lacked subject matter and personal jurisdiction in the original paternity action; that the

purge condition requiring future compliance with the support order was invalid; and that the trial court improperly refused to grant him a hearing before ordering his recommitment. We hold that the trial court did have personal jurisdiction and was competent to enter the original support order and to subsequently find C.A.B. in contempt. We reverse that part of the court's order recommitting C.A.B. to jail because the court did not grant C.A.B. a hearing on his failure to comply with a purge condition requiring that he remain current in his future support obligation.

On February 24, 1981, C.A.B. entered into a settlement agreement with V.J.H. in which he admitted paternity of V.J.H.'s unborn child. The questions of C.A.B.'s liability for lying-in expenses and his child support obligation were deferred until after the birth of the child. The trial court, the Honorable John J. Byrnes presiding, approved the settlement agreement. V.J.H. gave birth to C.T.B. on July 11, 1981 and upon motion of the child support enforcement agency (agency), the court held a support hearing on October 26, 1981 and ordered C.A.B. to make weekly payments on the lying-in expenses and child support.

In 1989, the agency filed a petition for contempt with the trial court, the Honorable James L. Carlson presiding, which issued an order to show cause for contempt and set a hearing on the petition. C.A.B. failed to appear at the first hearing and a bench warrant was issued for his arrest. At the rescheduled contempt hearing, the court found C.A.B., who appeared without counsel, in contempt for his willful and intentional failure to comply with the support order. The court ordered C.A.B. to serve six months in the county jail unless he purged himself of the contempt by fulfilling certain conditions. The purge conditions required, in part:

a. Pay total arrears by September 4, 1989; either by obtaining permission from the party who posted bond to apply that bond to child support arrears and [C.A.B.] paying remainder personally or [C.A.B.] paying the total on his own.

b. Make regular and timely payments of $67.50 per week to be applied $42.50 current and $25.00 to the lying in expenses and not arrears.

When C.A.B. failed to pay the total arrears, a warrant of commitment was issued. C.A.B. was arrested and confined to the county jail to begin serving the six-month sentence. C.A.B. paid the total arrears within twenty-four hours of being arrested and was released from confinement.

On March 6, 1990, the agency filed in the trial court, the Honorable Robert J. Kennedy presiding, a notice of motion and motion to re-execute commitment alleging that C.A.B. had failed to comply with the requirement that he make regular and timely payments in the future. C.A.B.'s counsel filed a motion to dismiss alleging that the trial court lacked subject matter and personal jurisdiction in the original paternity action and that the second purge condition, involving future obligations, was invalid and could not be the basis for C.A.B.'s recommitment.

In its decision, the trial court found that it did have subject matter jurisdiction and that C.A.B., by his actions between 1989 and 1990, had waived any objection he might have had to the court's personal jurisdiction. The court also concluded that future compliance with an existing support order was a valid purge condition under the remedial contempt statute and, without affording him an opportunity to explain his failure to pay, ordered C.A.B. to serve the balance of his six-month jail sentence. C.A.B. appeals from this order.

Whether a court has jurisdiction is a question of law. We determine that whether a contemnor can be ordered, as a purge condition, to comply in the future with a preexisting support obligation and be recommitted if he or she fails to do so is also a question of law. We review questions of law independently without any deference to the trial court. *Ter Maat v. Barnett,* 156 Wis. 2d 737, 740, 457 N.W.2d 551, 553 (Ct. App. 1990).

C.A.B. initially argues that the trial court lacked subject matter jurisdiction in the underlying paternity action because the action was not commenced in 1981 by the filing and service of a summons and complaint as required by sec. 801.02(1), Stats. C.A.B.'s argument ignores sec. 52.28, Stats. (1979–80), which was in effect on the date C.A.B. entered into the underlying settlement agreement.[1] Section 52.28 provided in part:

> A woman . . . who is pregnant with a child which is likely to be born out of wedlock, may enter into an agreement with the person claimed by her to be the father of the child. Such agreement may be entered into at any time prior to final judgment . . .. The agreement shall include a determination of all facts and orders which s. 52.37 requires the court to determine in its order for judgment . . .. By the terms of the agreement the defendant must submit personally to the jurisdiction of the court, and consent to entry of judgment in accordance with the terms of the agreement.

The settlement agreement entered into by V.J.H. and C.A.B. met these statutory requirements: C.A.B.

---

[1]This section was repealed by sec. 9, ch. 352, Laws of 1979, effective July 1, 1981; sec. 25 of this legislation created a new paternity procedure, secs. 767.45 through 767.53, Stats.

submitted personally to the jurisdiction of the trial court and consented to the entry of judgment in accordance with the terms of the settlement agreement. Since sec. 52.28, Stats., conferred jurisdiction by means of such a settlement agreement, the trial court properly had subject matter and personal jurisdiction in this action.

C.A.B. argues that his submission to the jurisdiction of the court was defective because the 1981 settlement agreement is unenforceable as vague and indefinite and it does not set forth the specific amount of his financial obligations. This argument avoids the obvious: the settlement agreement was entered into before the child was born.[2] Therefore, the lying-in expenses and child support obligation were unknown; it is for these reasons that the monetary issues were held in abeyance until after the birth of the child. Further, until the child was born the court could not consider the child's needs in establishing C.A.B.'s obligation for the future support of the child as required by sec. 52.37(2m), Stats. (1979–80). We conclude that under the then-existing statute, the settlement agreement was valid and properly invoked the authority of the trial court to adjudge C.A.B. to be the father of V.J.H.'s unborn child.

C.A.B.'s next argument is that his written agreement to submit to the jurisdiction of the court was defective because it was not made knowingly and it was signed without benefit of counsel. C.A.B. waived this argument and its underpinnings by seeking affirmative relief from the trial court in 1987 when, with the assistance of counsel, he brought a petition seeking custody

---

[2]The settlement agreement is dated February 24, 1981; the court's judgment approving the settlement agreement was entered on February 24, 1981; and the child was born July 11, 1981.

of C.T.B. *See Stroup v. Career Academy of Dental Technology,* 38 Wis. 2d 284, 288, 156 N.W.2d 358, 360 (1968).

The last issue raised by C.A.B. concerns the procedures employed when the court ordered him recommitted to jail to serve the balance of the previously imposed jail time. In addition, C.A.B. argues that the purge condition which required him to stay current in his weekly future support obligation is invalid. We hold that when C.A.B. requested a hearing on the petition for his recommitment the court was obligated to honor that request.

After the court denied C.A.B.'s motions to dismiss, C.A.B.'s counsel asked for a hearing on the matter of the petition for recommitment. The court denied C.A.B. a further hearing stating:

> He has been found in contempt already. That was a finding. He was in the process of being taken into custody. He was committed, taken into custody, when you stayed it, as you should, with your motion, but he was found in contempt, and now that I ruled against your motion there is no question that I undue [sic] the Stay.[3]

The trial court was correct in holding that the original finding of contempt was controlling. However, the trial court erred when it held that, before being jailed, C.A.B. was not to be given the chance to explain his

---

[3]The trial court affirmed this finding in its written decision:

Purge condition or remedial sanction entered in this case is meant to insure [C.A.B.'s] compliance with that prior order that he must pay current support. He has already been found in contempt for failure to pay the current support. It is only appropriate that the contempt order be designed to insure that this doesn't happen again. If it does happen again, he will suffer a commitment to the County Jail as ordered in the contempt finding. However, he has the keys to the jail as required in a remedial contempt situation. He can catch up with his current support and make his current support payments as called for.

failure to fulfill the purge condition that he stay current in his weekly future support obligation.

There is no dispute that C.A.B. received due process before the original finding of contempt was made. *See Noack v. Noack,* 149 Wis. 2d 567, 571–74, 439 N.W.2d 600, 601–02 (Ct. App. 1989). C.A.B. had been given notice of the original contempt hearing; the agency had established its prima facie case of showing C.A.B. was in arrears; he had been given an opportunity to present evidence; and he had failed to meet his burden to establish that his refusal to pay was for some reason other than a willful and intentional avoidance of payment. Only after these due process requirements had been met was C.A.B. found to be in contempt of court, the sanction of a jail term imposed, and purge conditions developed.

Although C.A.B. already has been given full due process, he is not prohibited from seeking a court hearing to either modify imposed purge conditions or to explain why he has not complied with the purge conditions. When a contemnor's liberty interests are at risk he or she must be given the opportunity to show the court that the failure to comply with the purge condition was not willful and intentional. *Cf. Kaminsky v. Milwaukee Acceptance Corp.,* 39 Wis. 2d 741, 750, 159 N.W.2d 643, 648–49 (1968).

Purge conditions have been described as the "keys to the jail house door," and it is not unreasonable to require the contemnor to use the keys to avoid jail. A contemnor who wishes to avoid jail is required to seek a hearing before the court and has the burden of convincing the court that the purge condition is unreasonable or

843

that noncompliance with the purge conditions is unintentional or the result of unforeseen events.

The court is free to modify a purge condition if it becomes convinced that the condition is not feasible or is not reasonably related to the cause of the underlying contempt. However, if the court becomes satisfied that the contemnor's noncompliance with a purge condition was willful and intentional, the court may order the originally imposed jail sentence to be served immediately.

The reimposition of the balance of the jail sentence is not grounded on the contemnor's failure to fulfill the purge condition; rather, it is grounded on the original finding of contempt.

We conclude that when a contemnor requests a hearing before being recommitted to the county jail or to modify a purge condition, the trial court is obligated to afford the contemnor a meaningful hearing. Therefore, we remand this case to the trial court to conduct a hearing consistent with this decision.

Next we consider whether the purge condition that C.A.B. remain current into the future on his weekly support obligation is feasible. The enforcement of a support obligation is accomplished through the use of remedial contempt that looks to terminate a continuing contempt of court and insure future compliance with the support order. *See State ex rel. N.A. v. G.S.,* 156 Wis. 2d 338, 342, 456 N.W.2d 867, 869 (Ct. App. 1990); secs. 785.01(3) and 785.04(1)(d), Stats.

The distinguishing characteristic of remedial contempt is that the sanction imposed for violation of the

844

court order must be purgeable through compliance. *State v. King,* 82 Wis. 2d 124, 130, 262 N.W.2d 80, 83 (1978). The sanction is a form of coercive action designed to compel the contemnor to take affirmative and corrective action to remain in compliance with an existing court order. *See N.A.,* 156 Wis. 2d at 341–42, 456 N.W.2d at 869. The purge condition contrasts with the sanction because it is a means for the contemnor to avoid the sanction by atoning for his or her past failure to obey the court's order. *See Herd v. State,* 377 A.2d 574, 575–76 (Md. Ct. Spec. App. 1977).

We recently wrote:

> The statutory language [of sec. 785.04, Stats.] does not specifically authorize a court to provide purge provisions. However, all courts in this state have an inherent power to hold in contempt anyone who disobeys a lawful order. This power exists as "a necessary incident to the exercise of judicial power and is reasonably to be implied from the grant of such power." Consistent with this power is the court's authority to provide purge conditions designed to end the contempt. Such conditions are also consistent with the purpose of remedial sanctions, which are "imposed for the purpose of terminating a continuing contempt of court."

*State ex rel. Larsen v. Larsen,* 159 Wis. 2d 672, 676, 465 N.W.2d 225, 227 (Ct. App. 1990) (citations omitted).

The purge conditions imposed by the court must be feasible *and* must be reasonably related to the cause or nature of the contempt. *See id.*

The determination that a purge condition be feasible and reasonably related to the cause or nature of the contempt is best made by the trial court at the hearing

requested by C.A.B. We remand for that hearing. At such a hearing, the burden will be on C.A.B. to satisfy the court that the purge condition, requiring him to comply in the future with his court ordered support obligation, was not feasible or was not logically related to the cause or nature of the contempt.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.