Dr. John **PUCHNER**, Petitioner,

v.

William **KRUZICKI**, Waukesha County Sheriff, Respondent.

No. 96–C–153.

United States District Court, E.D. Wisconsin.

Feb. 21, 1996.

Thomas E. Hayes, Milwaukee, WI, for Petitioner.

Stephen Schmitz, Waukesha County Corporation Counsel, Waukesha, WI, for Respondent.

## DECISION AND ORDER

WARREN, District Judge.

Before the Court is Dr. John Puchner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the above-captioned matter. On February 5, 1996, the petitioner was incarcerated and began serving a 60–day sentence for contempt in the Waukesha County Huber Facility. On February 13, 1996, this Court ordered a STAY of state court proceedings pursuant to 28 U.S.C. § 2251 and held an expedited hearing on February 15, 1996 at 11:00 a.m. For the following reasons, Dr. Puchner's Petition is GRANTED. Dr. Puchner is to be afforded a hearing before a circuit court judge in order to demonstrate that his inability to meet the purge conditions is not willful and intentional.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 9, 1996, the petitioner Dr. John Puchner filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) challenging his incarceration for civil contempt for allegedly willfully failing to pay court ordered child support. On February 12, 1996, a Brief in Support of Petition for Writ of Habeas Corpus was submitted by petitioner. On February 13, 1996, after a preliminary review of the Petition and Brief, this Court ordered a stay of state court proceed-

ings, ordered the respondent to show cause why the Writ should not be granted and ordered the petitioner to be released forthwith pending resolution of the Writ. On February 15, 1996, a hearing was held before this Court, in attendance were Dr. John Puchner represented by his attorney Thomas E. Hayes, Steven Schmitz attorney for Waukesha County Corporation Counsel representing Waukesha County Sheriff William Kruzicki, and Bruce O'Neill attorney for petitioner's former wife, Anne Hepperia. The Department of Justice for the state of Wisconsin reviewed the pleadings and decided that the Department did not have a role in this matter.

The underlying circumstances in this cause of action involve a divorce and ensuing custody battle marked by intense animosity and bitter feelings. By way of brief background, the petitioner and his wife, now known as Anne C. Hepperla, were divorced in Minnesota in Hennepin County, on October 27, 1992, following a three-year marriage. (Exh. 1.) The marriage produced one child, Paul Andrew Puchner, born April 4, 1992. The Minnesota judgment awarded legal custody of Paul to both parties with his physical custody being awarded to Ms. Hepperla and ordered Dr. Puchner to pay $480.00 per month for child support. (Exh. 1.) The venue of the case was transferred to Waukesha County in 1993. On December 8, 1993, Ms. Hepperla filed a Motion requesting that Dr. Puchner be held in contempt for his refusal to sign appropriate health insurance forms, pay child support and provide Ms. Hepperla's attorney with a copy of his work schedule. (Exh. 2.) On December 22, 1993, the Honorable Willis Zick, Waukesha County Circuit Court Judge, requested petitioner's appearance at a hearing scheduled for February 11, 1994. (Exh. 3.) On January 31, 1994, the petitioner submitted a notice of countermotion to Judge Zick requesting, *inter alia*, that he appear via telephone. (Exh. 4.) The February 11, 1994 hearing before Judge Zick and what transpired is currently being considered by this Court.

At the February 11, 1994 hearing before Judge Zick, Anne Hepperla and her attorney Bruce O'Neill were present in person; the petitioner appeared *pro se* via telephone from Michigan. The transcript of the hearing before Judge Zick indicates that the hearing was scheduled to address the motion dated December 6, 1993 filed by Ms. Hepperla. Ms. Hepperla first requested that Dr. Puchner pay $1,500.00 to Dr. Matusiak a court appointed psychologist; second, that Dr. Puchner pay Ms. Hepperla $1,095.00 for Dr. Matusiak's bill already paid by Ms. Hepperla; and third that Dr. Puchner pay $150.00 which was ½ the placement study fee for the Waukesha County Family Court Counseling Services. (Exh. 5, Transcript of February 11, 1994 Hearing "Trans." at 2–3.) Next, Ms. Hepperla asked that Dr. Puchner be held in contempt for his refusal to sign health insurance forms (Trans. at 3–4) and for refusal to pay child support. (Trans. at 7.) Mr. O'Neill, Ms. Hepperla's attorney, argued that Dr. Puchner was in child support arrearage totaling $2,920.00 through the first half of February, 1994 and requested purge conditions of an extra $200.00 per month. The petitioner responded, *inter alia,* that he had been paying child support to the state of Minnesota, arguing that he was under obligation to pay the state of Minnesota, and that the checks were being returned to him. Dr. Puchner requested "discovery" in order to present checks and receipts. (Trans. at 13–14.) After a rather convoluted discussion, Judge Zick found Dr. Puchner in contempt for not paying the $150.00 toward the $300.00 study fee and for failure to pay child support totaling "$2,920.00 under the $480.00 per month order." (Trans. at 19–22.) The exact transcript reads at page 22:

> THE COURT: So the Court will find he owes $2920 under the $480 per month order then, based on Mr. O'Neill's statement, which the Court find much more credible than Dr. Puchner's semi-comprehensible statements.
>
> So then we will find him in contempt for not paying that and sentence him to 60 days in the county jail for that contempt. We'll find he has the ability to pay that with his $32,000 salary. So, the Court will find it's an intentional failure—refusal to pay. And then, Mr. O'Neill, do you want him to purge that by paying the $100 a month, is that what—....

(Trans. continued at 23)

THE COURT: Okay. So, we will order then that he doesn't have to serve the sentence, as long as he pays the payments, $480 from now on, plus a hundred a month.

MR. O'NEILL: It's 200 a month, a hundred per paycheck.

THE COURT: A hundred per check from now on. So he will have to pay $340.00 from each of his checks received subsequent to today then. If he does that, he will be purging that contempt finding and will not have to go to jail. And then if he does not do that, Mr. O'Neill will send us a letter with an order to execute the arrest warrant. And then the next time he is in Wisconsin, the sheriff's department will pick him up and he can serve his 60 day jail sentence.

(Trans. continued at 25)

THE COURT: Okay. So, half of that he owes her, what would get added on, would be the twenty-nine twenty on child support, the hundred fifty on the study, half of whatever—half of the total of Dr. Matusiak, and then whatever is short on Prudential. Those would be the items added on to the purge figure then. Fees, we'll worry about that when we come back here for our trial.

(Trans. continued at 27)

MR. PUCHNER: I'd ask if you read the affidavit, my counter motion?

THE COURT: I don't read affidavits at all. If you told me everything—

MR. PUCHNER: You do not read—

THE COURT: I do not read people's affidavits and things until I get—

MR. PUCHNER: —supporting documents.

On February 21, 1994 Judge Zick ordered that Dr. Puchner be found in contempt for (1) his intentional refusal to pay $150.00 in reimbursement for one-half of the cost of the placement study executed by the Waukesha County Family Court and (2) intentional refusal to pay child support, an arrearage totaling $2,920.00. (Exh. 6.) The February 21, 1994 Order sentenced Dr. Puchner to 60 days in the Waukesha County Jail and imposed purge conditions of $680.00 per month.

(Exh. 6.) On March 4, 1994, the petitioner filed a *pro se* motion asking for an opportunity to explain his inability to pay the court ordered payments. (Exh. 7.) The petitioner maintains that this Motion was never heard and that he has never been given an opportunity to explain his inability to purge himself of the contempt conditions. Judge Zick retired from the Waukesha County Circuit Court bench and approximately nine months later the Honorable Donald Hassin was appointed to replace Judge Zick on approximately November 14, 1994. (Exh. 13.) On September 2, 1994, the petitioner was incarcerated as he arrived in Wisconsin to visit with his son. While in jail for the civil contempt charges, the petitioner filed with the circuit court a request to review his financial inability to pay the purge conditions. Again, this matter was never scheduled for a hearing. Because an appeal was pending before the Wisconsin Court of Appeals regarding the contempt order, the petitioner, having obtained counsel, was released from custody and allowed to return to Michigan.

On November 8, 1995, the Wisconsin Court of Appeals sustained the trial court's order adjudging the petitioner in contempt concluding that the contempt order was valid. (Exh. 9: *Puchner v. Puchner*, 542 N.W.2d 237, 1995 WL 654054 (Wis.App.1995).) On January 17, 1996, the Wisconsin Supreme Court declined to review petitioner's appeal. On January 19, 1996, and on February 5, 1996, the petitioner filed motions with the trial court requesting a hearing concerning his inability to pay the purge conditions ordered by Judge Zick. (Exhs. 10, 12.) On January 19, 1996, Judge Donald Hassin denied Dr. Puchner's request for a hearing. (Exh. 11.) On February 5, 1996, petitioner was incarcerated and began serving a 60–day sentence for contempt in the Waukesha County Huber Facility (the Court notes that petitioner had previously served three days during September, 1994 toward his 60 day sentence) for failing to pay ½ cost of a placement study and for failing to pay $2,920.00 in child support.

In his Petition for Writ of Habeas Corpus, the petitioner argues that at the February 11, 1994 hearing wherein the petitioner was

found in contempt, the court "took no sworn testimony, failed to accept any exhibits into evidence, refused to read any affidavits, and did not look at [Dr. Puchner]'s evidence before adjudging [Dr. Puchner] in contempt and establishing purge conditions that required payment of $680.00 per month." (Petition at 5.) Furthermore, the petitioner continues to request a hearing in order to explain the basis for not purging his contempt. Thus, the petitioner argues that his incarceration violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. This Court held a hearing on Thursday, February 15, 1996 and this matter is ready for resolution.

## II. *LEGAL STANDARD*

 The Writ of Habeas Corpus, an exceptional remedy, is designed as a "bulwark against convictions that violate fundamental fairness." *Engle v. Isaac*, 456 U.S. 107, 126, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982). In the exercise of its habeas jurisdiction, a federal court may grant relief only if the petitioner shows that he is in custody "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a); *See Estelle v. McGuire*, 502 U.S. 62, 67–69, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Before a district court may consider a habeas corpus petition on its merits, it must determine that each claim has been "exhausted" in the state courts. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.), *cert. denied*, 502 U.S. 944, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991). Claims are exhausted when they have been presented to the highest state court for a ruling on the merits of the claims or when state remedies no longer remain available to the petitioner. *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. at 1570 n. 28; *Farrell*, 939 F.2d at 410.

 Before entertaining the merits of a petition for habeas corpus, a federal court must determine whether the claims in the petition have been procedurally defaulted. *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2753, 129 L.Ed.2d 870 (1994). "Procedural default in cases under § 2254 depends on state law." *Jenkins v. Gramley*, 8 F.3d 505,

507 (7th Cir.1993). "When a state would treat complete failure to present a claim as forfeiture, . . ., the federal court may enforce the state's bar on collateral review." *Reese v. Peters*, 926 F.2d 668, 671 (7th Cir.1991). To escape procedural default, the claim must be presented so as to "alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely the issue." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir.1992). Procedural default may be excused only where a petitioner shows "good cause for the default and actual prejudice stemming from the default." *Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 528, 133 L.Ed.2d 434 (1995). When hearing a petition for habeas corpus, a finding of fact is accorded a presumption of correctness by the federal court. 28 U.S.C. § 2254(d). In order to overcome this presumption, the petitioner must "establish by convincing evidence that the factual determination by the State court was erroneous." *Id.*

## III. *ANALYSIS*

 Before a state prisoner can raise a claim in federal habeas corpus proceedings, he must exhaust state remedies. *See* 28 U.S.C. § 2254(b). According to the Seventh Circuit:

Before considering a petition for habeas corpus on its merits, a district court must make two inquiries—whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings. If the answer to either of these inquiries is "no" the petition is barred.

*Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir.1988), *cert. denied*, 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). The Court concludes that Dr. Puchner has, in fact, exhausted his state court remedies. The highest state court was afforded a fair opportunity to rule on the factual and theoretical substance of Puchner's claims. Therefore, because no state remedy is currently available to him, the exhaustion requirement is satisfied.

 Next the Court determines whether any of Puchner's claims are procedurally

defaulted. Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2935, 124 L.Ed.2d 685 (1993). Because Puchner's grounds for relief were presented to the state court, procedural default is not at issue. Puchner's claims satisfy the procedural requirements of section 2254, and therefore may be addressed on the merits. Section 2254 authorizes habeas relief to remedy judgments issued "in violation of the Constitution or laws and treaties of the United States," and may not be invoked to correct erroneous interpretations of state law which fail to reach the level of Constitutional violations. So doing, the Court finds that Puchner is entitled to relief.

The two issues before this Court are whether (1) Dr. Puchner was denied due process at the February 11, 1994 hearing before Judge Zick; and (2) whether Dr. Puchner was denied due process for failing to be afforded a hearing in order to allow him to explain why he was unable to purge the contempt conditions. The Court concludes that Dr. Puchner was not denied due process at the hearing held before Judge Zick on February 11, 1994, however, Dr. Puchner requested a hearing in order to explain his inability to purge himself of the contempt conditions and has never been afforded a hearing, in violation of the Due Process Clause of the United States Constitution.

### A. *Whether the February 11, 1994 Contempt Order is Valid.*

In the Petition, petitioner argues that (1) the trial court did not consider any competent evidence before finding him in contempt on February 11, 1994; (2) the February 11, 1994 contempt order is invalid because the trial court failed to consider the possibility of a wage assignment order in lieu of contempt; and (3) the moving papers and the trial court's order for appearance fail to expressly mention that the appellant may be sentenced to jail if he is found in contempt. The petitioner bears a heavy burden because

the trial court's findings of fact in a contempt proceeding are conclusive unless clearly erroneous. *See Town of Seymour v. City of Eau Claire,* 112 Wis.2d 313, 318, 332 N.W.2d 821, 823 (Ct.App.1983). Moreover, Section 2254 does not authorize this Court to sit in appellate review of state court decisions. *See Brecht v. Abrahamson,* 507 U.S. 619, 632–34, 113 S.Ct. 1710, 1719, 123 L.Ed.2d 353 (1993).

The record before this court reveals that on or about December 8, 1993, Ms. Hepperla filed a Motion with the Circuit Court giving petitioner notice that pursuant to Wis. Stats. § 767.30(3) Ms. Hepperla was requesting that Dr. Puchner be held in contempt for, *inter alia,* his failure to pay child support. (Exh. 2 at 2.) Thus the petitioner was put on notice that a pending Motion requested he be held in contempt. On December 22, 1993, Judge Zick scheduled a hearing for February 11, 1994 pursuant to Wis. Stats. § 767.125. (Exh. 3.) In response, petitioner filed a Countermotion reserving "the right to respond, via countermotions, affidavits, and supporting documents." (Exh. 4 at 2.) Petitioner's attached affidavit stated he opted to address only scheduling matters at this time and stated "I am obligated to pay child support in Wisconsin and I have." (Exh. 4 at 5.) Therefore, Dr. Puchner was afforded sufficient notice that the hearing to be held was for the purpose of determining whether he was in contempt of court for failure to pay child support, and Dr. Puchner did not object to the notice provided to him. The Wisconsin Court of Appeals held that petitioner consequently waived his right of review of those contentions. *Puchner,* 1995 WL 654054, at *2. As previously stated, under Section § 2254, "when a state would treat complete failure to present a claim as forfeiture, …, the federal court may enforce the state's bar on collateral review." *Reese,* 926 F.2d at 671.

At the February 11, 1994 hearing before Judge Zick, it is undisputed and the transcript demonstrates that the Court took no sworn testimony, failed to accept any exhibits into evidence and failed to read the petitioner's affidavit before finding the petitioner in contempt. *Marriage of Van Offeren v. Van*

**1278**

*Offeren,* 173 Wis.2d 482, 496 N.W.2d 660 (Ct.App.1992) states:

> It is true that mere inability to pay support or maintenance cannot support a finding of contempt. *Burger v. Burger,* 144 Wis.2d 514, 528, 424 N.W.2d 691, 697 (1988). However, a person may be held in contempt for failure to pay where that failure is willful and contemptuous and not the result of an inability to pay. *Id.* In a contempt proceeding, the burden of proof is on the person against whom the contempt is charged to show that the conduct is not contemptuous. *Besaw v. Besaw,* 89 Wis.2d 509, 517, 279 N.W.2d 192, 195 (1979).

The case law cited by the Wisconsin Court of Appeals in *Puchner* agrees that it is the alleged contemnor's burden to demonstrate that his or her conduct is not contemptuous. *Puchner,* 1995 WL 654054, at *2 (citing *Noack v. Noack,* 149 Wis.2d 567, 575, 439 N.W.2d 600, 602 (Ct.App.1989)). The record demonstrates that Attorney Bruce O'Neill established a prima facie case that Dr. Puchner violated the child support order by failing to pay support for specific time periods. Consequently, the burden then shifted to Dr. Puchner to prove that his failure to pay was not contemptuous. Judge Zick admitted that he did not read the petitioner's affidavits due to a lack of supporting documents. Although this Court finds the February 11, 1994 hearing somewhat heavy-handed, as the appellate court notes Dr. Puchner "did not present documents in support of his contentions at the hearing or in his countermotion." Instead, the petitioner viewed his countermotion as opportunity to reserve the right to respond to the motions made by Mr. O'Neill. Unfortunately, this was not the proper procedural stance. In a remedial contempt proceeding, once Mr. O'Neill made a prima facie showing of a violation of a court order, the petitioner was required to demonstrate that his conduct was not contemptuous. When asked whether the petitioner had the child support money sent back from Minnesota, the petitioner responded "I have none. I have absolutely no money because of legal costs and things for my rights to present before a Court." (Trans. at 14.) The petitioner's response to Judge Zick,

whether due to frustration, evasiveness, or a misunderstanding, failed to meet the required burden. "Where the alleged contemnor chooses not to present evidence on his or her own behalf, the trial court is not precluded from finding that the underlying conduct is contemptuous." *Puchner,* 1995 WL 654054, at *3 (citing *Noack,* 149 Wis.2d at 575, 439 N.W.2d at 603).

As for the petitioner's contention that the trial court failed to consider the possibility of a wage assignment order in lieu of contempt under Wis.Stats. § 767.265, this Court is in agreement with the analysis of the Wisconsin Court of Appeals. *See Puchner,* 1995 WL 654054, at *3. In an action brought under 28 U.S.C. § 2254, the factual determinations of the state trial and appellate court are "presumed to be correct." 28 U.S.C. § 2254(d) (providing that "a determination after a hearing on the merits of a factual issue ... evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct"); *Lewis v. Huch,* 964 F.2d 670, 671 (7th Cir.1992). During the February 11, 1994 hearing Dr. Puchner discussed how a wage assignment would not be feasible stating "[t]here simply isn't the money to do that." (Trans. at 15.) Thus, the possibility of wage assignment was raised and rejected by both parties, therefore, "[j]udicial estoppel prevents [petitioner] from claiming on appeal that a wage assignment should have been utilized." *Puchner,* 1995 WL 654054, at *3.

Finally, petitioner argues that he should have been put on notice that he could be sentenced to jail if he is found in contempt. This argument was not explicitly addressed by the Wisconsin Court of Appeals, and therefore, it is unclear whether this claim is consequently procedurally defaulted. Nonetheless, the Court finds this contention without merit. In a remedial contempt proceeding, the contemnor's ability to avoid the sanction by satisfying the purge conditions "obviates the need for due process." *In re Paternity of Cy C.J.,* 196 Wis.2d 964, 539 N.W.2d 703, 704 (Ct.App.1995). Wis.Stats. § 767.305 requires that the party be given notice and a hearing, which was complied

with by the Wisconsin circuit court. Therefore, the Court concludes that the underlying contempt charge is valid.

### B. *Whether the Petitioner was Afforded a Hearing in Order to Explain his Inability to Purge Himself of the Contempt Conditions.*

■ At the hearing before this Court on February 15, 1996, it was undisputed that the petitioner has never been granted a hearing in order to explain the basis for his failure to comply with the purge conditions. Wisconsin case law clearly states "[w]hen a contemnor's liberty interests are at risk he or she must be given the opportunity to show the court that the failure to comply with the purge condition was not willful and intentional." *State ex. rel. V.J.H. v. C.A.B.*, 163 Wis.2d 833, 843, 472 N.W.2d 839, 843 (Ct.App.1991). On appeal of the contempt order, the Wisconsin Court of Appeals found that the petitioner "did not request a hearing but obtained a stay of the order." And "[w]ithout the request, the trial court was not obligated to afford [petitioner] an additional hearing." *Puchner*, 1995 WL 654054, at *4. However, the evidence submitted before this Court indicates that the petitioner requested a hearing on numerous occasions and, in fact, has never been granted a hearing. The purpose of such a hearing is to allow the contemnor "the opportunity to show the court that the failure to comply with the purge condition [i]s not willful and intentional." *Id.* (citation omitted).

■ The evidence submitted before this Court unequivocally demonstrates that the petitioner requested a hearing on numerous occasions. On March 14, 1994, appearing *pro se*, the petitioner filed a Motion to Reconsider. (Exh. 7.) This Motion states "I cannot afford to pay $680.00 per month" (the purge conditions) and requests a hearing before Judge Zick. When the petitioner was incarcerated in September, 1994, he made two requests for a hearing regarding his inability to purge himself of the contempt conditions. (Exhs. 14, 15.) A letter to Judge Hassin dated December 21, 1994 from petitioner requested a hearing on all pending motions including motions dated 6/14/94, 3/19/94 and

1/22/93. (Exh. 38.) At the evidentiary hearing held before this Court, the petitioner, under oath on the witness stand, stated that he had not withdrawn any motions with regards to his continued request for a hearing and his inability to purge himself of the contempt conditions. On cross-examination, Attorney O'Neill, moved into evidence the May 4, 1994 Order of Judge Zick withdrawing all Motions, arguing that the petitioner waived his right for a hearing regarding the contempt charges (Exh. 28.) However, the petitioner stated that he withdrew all pending motions regarding child visitation which was the subject of an April, 1994 hearing. On January 17, 1996, the petitioner moved the circuit court for a hearing concerning his ability to fulfill the purge conditions established by Judge Zick. (Ex. 10.) However, on January 19, 1996, Circuit Court Judge Hassin summarily denied the request. (Ex. 11.) Again, on February 5, 1996, the petitioner requested a hearing to address the petitioner's inability to fulfill Judge Zick's purge conditions. Therefore, this Court finds that the petitioner, in fact, did request a hearing in order to explain why he was not able to pay the purge conditions, and has never been granted such a hearing.

The Wisconsin Court of Appeals decision, which addressed the validity of finding petitioner in contempt, failed to recognize that petitioner's *pro se* request for a hearing, dated March 1994, however unartfully pleaded, was a request nonetheless for a hearing to explain why he was not able to pay the purge conditions. Moreover, at the evidentiary hearing held before this Court, petitioner was quite adamant that he never waived his right to the hearing. The court in *V.J.H.* stated: "We conclude that when a contemnor requests a hearing before being recommitted to the county jail or to modify a purge condition, the trial court is obligated to afford the contemnor a *meaningful* hearing." *V.J.H.*, 472 N.W.2d at 844 (emphasis added). In *V.J.H.*, the case was remanded to the trial court to conduct a hearing consistent with this holding. Therefore, this Court orders that the petitioner must be afforded a meaningful opportunity to address the basis for his noncompliance with Judge Zick's purge conditions.

**1280**

 Moreover, this Court agrees with petitioner that there is nothing that permits a finding that the petitioner's requests made post-appeal are untimely. Furthermore, even if the petitioner did request a hearing at any point during the pendency of his appeal, the trial court would have been unable to entertain such a request. Therefore, because the petitioner has not been granted a hearing, this Court holds that petitioner's due process rights have been violated. Pursuant to *State ex rel. V.J.H. v. C.A.B.*, 163 Wis.2d 833, 472 N.W.2d 839 (Ct.App.1991) the Court orders a hearing before a circuit court judge where the burden will be on Dr. Puchner to satisfy the court that the purge conditions are not feasible and that his refusal to pay is for a reason other than a willful and intentional avoidance of payment. The Court holds that the lack of procedural protections afforded in a remedial contempt proceeding, when compared to punitive contempt, require a hearing be made available upon petitioner's request in order to protect petitioner's due process rights and comply with Wisconsin case law.

Having therefore granted the Writ of Habeas Corpus with regard to petitioner's request for a hearing, the Court feels compelled to comment on the underlying proceedings. The three-hour hearing held before this Court clearly demonstrates the vitriolic nature of this custody battle. Both parties are obstinate and entrenched in their thinking. The Court requests that this ruling will not continue to fuel the fire of animosity which currently burns brightly. Although the Court cannot require this, the Court requests both parties to step back and critically assess their behavior in these proceedings, the well-being of a child is at stake.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Puchner's petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **GRANTED.** Consistent with due process, Dr. Puchner is to be afforded a hearing before a circuit court judge in order to demonstrate that his inability to meet the purge conditions is not willful and intentional, any further incarceration is contingent upon the findings of that hearing.

**SO ORDERED.**