John D. PUCHNER, Petitioner–Appellant,

v.

William KRUZIKI, Waukesha County Sheriff, Respondent–Appellee,

and

Anne C. Hepperla, formerly known as Anne C. Puchner, Intervenor.

No. 96–1731.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1996.

Decided April 15, 1997.

Thomas E. Hayes (argued), Milwaukee, WI, for Petitioner-Appellant.

Steven R. Schmitz (argued), Office of the Corporation Counsel, Waukesha, WI, for Respondent-Appellee.

Bruce C. O'Neill, Fox, Carpenter, O'Neill & Shannon, Milwaukee, WI, for Intervenor.

Before CUMMINGS, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Normally, the federal courts do not become involved in child support disputes, as this is one of the matters most clearly allocated to the state courts in our federal system. In this case, however, John Puchner's failure to honor a child support agreement with his ex-wife, Anne Hepperla, became a federal case when he sought a writ of habeas corpus under 28 U.S.C. § 2254 challenging his incarceration pursuant to a contempt order entered by the state court judge. Puchner claimed before the district court, and now reiterates here, that the state court's contempt order was not supported by "competent proof," which in turn meant that his incarceration violated federal due process principles. Since Puchner is no longer in custody for his contempt, the respondents suggest that this case has become moot in any event. We agree and hereby dismiss the appeal.

## I

In December 1993, Hepperla filed a motion in the Waukesha County Circuit Court requesting that Puchner be held in contempt pursuant to Wis.Stat. § 767.30 for failure to pay child support and otherwise to comply with the parties' 1992 divorce judgment. Attached to that motion was an affidavit from her attorney detailing the various payments Puchner had failed to make. Puchner responded with a countermotion and affidavit in which he asserted that he would "only address scheduling matters at this time" and that he "reserve[d] the right to provide further affidavits related to pending motions in the future." He indicated that he would present evidence at an unspecified future time of his attempts to pay child support; he attached no documentary evidence whatsoever to his countermotion.

Waukesha Circuit Court Judge Willis Zick held a hearing on Hepperla's motion on February 11, 1994, at which Puchner appeared telephonically at his own request. Hepperla's attorney began by briefly reviewing the allegations of the contempt motion and his affidavit. Puchner responded that he had mailed the checks to Minnesota (the state where the divorce had been granted), and that Minnesota returned them to him. He alleged that he had the envelopes and uncashed checks to back up his account, but he did not produce them for the hearing. Judge Zick then asked him how much money he had, in light of his allegation that the uncashed checks had been returned. At first Puchner refused to say, claiming that "discovery" would be required on the matter, but eventually he declared that he was "flat broke." The hearing went on for some time, with Puchner interrupting both the court and Hepperla's attorney so often that the court threatened to hold him in contempt for his behavior at the hearing.

On the principal motion, Judge Zick decided that Puchner had contumaciously violated the court order requiring the child support payments. He relied both on Puchner's failure to submit any documentation of his attempted payments that might have countered the statements in Hepperla's attorney's affidavit, and on his judgment that Puchner's credibility was poor. He sentenced Puchner to 60 days in the Waukesha County Jail, but he also ordered that Puchner could purge himself of his contempt by paying Hepperla an additional $100 per bimonthly check over the $240 already due. When Puchner persisted in his uncooperative stance, he was arrested and incarcerated for the 60-day period. He served this sentence in fragments that were punctuated by various stays pending judicial proceedings. At this point, however, it is uncontested that he has completed serving the entire sentence.

The Wisconsin Court of Appeals affirmed the contempt order, rejecting the due process argument Puchner has raised here. That court found that the attorney's affidavit

was sufficient to establish the prima facie case of contempt, and that the burden then shifted to Puchner to show that his failure to pay was justified—a burden Puchner did not come close to meeting, given his refusal to provide any evidence whatsoever. The Wisconsin Supreme Court denied Puchner's petition for review. See *Puchner v. Puchner,* 546 N.W.2d 469 (Wis.1996). On habeas corpus review, the district court agreed on the due process point, *Puchner v. Kruzicki,* 918 F.Supp. 1271, 1278 (E.D.Wis.1996), but it granted partial relief by ordering that Puchner be given a hearing to determine whether he was financially capable of purging himself of the contempt. The state court did so and concluded that Puchner's failure to pay was willful and intentional. Puchner concedes that he has not, to this day, paid the full arrearage.

## II

■ The initial (and as it turns out, only) question we must consider is whether, as the respondents argue, Puchner's petition has become moot. It is undisputed that he is no longer in custody for his contempt of court. Because Puchner was "in custody" at the time he filed his habeas petition, he fulfilled the jurisdictional requirement of § 2254(a), but as we pointed out in *D.S.A. v. Circuit Court Branch 1,* 942 F.2d 1143, 1145 n. 2 (7th Cir.1991), this does not necessarily mean that he escapes mootness. The mootness inquiry turns instead on whether sufficient collateral consequences of the conviction persist to give the petitioner "a substantial stake in the judgment of conviction which survives the satisfaction of the sentences imposed on him." *Carafas v. La Vallee,* 391 U.S. 234, 237, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968). See also *Sibron v. New York,* 392 U.S. 40, 50–58, 88 S.Ct. 1889, 1896–1900, 20 L.Ed.2d 917 (1968); *D.S.A.,* 942 F.2d at 1145–46. The possibility that a conviction might be used to enhance punishment for a later crime is enough to defeat a finding of mootness. *Reimnitz v. State's Attorney,* 761 F.2d 405, 408 (7th Cir.1985). In *Bryan v. Duckworth,* 88 F.3d 431 (7th Cir.1996), we noted that it is unlikely enough that convictions (or similar adjudications such as the results of a

prison disciplinary proceeding) will have no collateral consequences that "it is the respondent's burden to plead and prove that the petitioner's conviction will not." *Id.* at 433.

This analysis, however, is based on two underlying assumptions: first, that the petitioner is attacking an underlying criminal conviction or its equivalent, and second, that some significant collateral consequences can be identified. We have serious doubts as to whether a judgment finding someone in civil contempt qualifies as a "conviction" for purposes of the collateral consequences rule. (Incarceration for civil contempt plainly qualifies as "custody" for jurisdictional purposes, but that is not the question before us.) In *Lane v. Williams,* 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), the Supreme Court distinguished between attacks on a sentence and attacks on an underlying conviction. This suggests that it is appropriate to look at the underlying ruling of the district court to see if it is the type of judgment the *Lane* Court had in mind. Unlike even a misdemeanor conviction, which represents an adjudication of some wrongdoing, civil contempt is a tool used by courts to compel compliance with their orders. The contemnor "holds the keys to the jailhouse" in his own hands, and compliance produces an immediate release.

■ We need not finally resolve whether a judgment of civil contempt is the kind of "conviction" contemplated by the collateral consequences rule, however, because it is clear that Puchner's contempt order did not carry the kind of collateral consequences that allow him to escape mootness now that he is released. In *Carafas,* the Supreme Court listed a number of typical consequences that were enough to save a case from mootness, which included the ability to engage in certain businesses, to vote in elections, or to serve as a juror. A judgment of civil contempt does not threaten any of these interests. Although we have rejected the argument that collateral consequences should not be found when they are of the petitioner's own making—in particular, the possibility of enhancement of a future criminal sentence,

when the petitioner is presumably able to avoid the consequences by refraining from committing further crimes—that rule is less helpful when the underlying conviction itself is wholly avoidable, as is the case with civil contempt.

This case is instead closer to the situation presented to the Fourth Circuit in *Broughton v. North Carolina*, 717 F.2d 147 (4th Cir.1983). There the petitioner had been found guilty of criminal contempt and had completed serving a 30–day sentence that was imposed. The Fourth Circuit found that his habeas petition was moot, because there were no serious collateral consequences in the sense of civil disabilities. This conclusion flowed in part from the nature of contempt orders themselves. Even though civil and criminal contempt differ in important respects, we consider *Broughton* helpful in evaluating Puchner's analogous arguments about civil contempt.

■ Here, Puchner fears that if he is held in criminal or civil contempt again for willfully failing to satisfy his support obligation, the present adjudication of civil contempt might be used to enhance his sentence. Remedial contempt proceedings to enforce a support order are punishable by a sentence of up to six months in Wisconsin, see Wis.Stat. § 785.04(1)(b), and felony criminal sanctions for nonsupport are also available under Wis. Stat. § 948.22. Nevertheless, we find that this is too speculative a basis for sustaining the § 2254 petition. Nothing in Wisconsin law suggests that an earlier finding of civil contempt could be used to enhance a sentence in a felony proceeding for nonsupport, and a civil or remedial contempt order would, as always, be dischargeable upon full compliance with the court's order.

We therefore VACATE the decision below and REMAND with instructions to dismiss the case as moot.