**Kenneth L. WRONKE, Petitioner,**

**v.**

**David J. MADIGAN, Sheriff, Respondent.**

**No. 96–CV–2171.**

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

Nov. 20, 1998.

---

Kenneth L. Wronke, Urbana, IL, pro se.

John C. Piland, Office of the State's Attorney, Urbana, IL, for Respondent.

### *ORDER*

MCCUSKEY, District Judge.

On July 8, 1996, Petitioner, Kenneth L. Wronke, filed his petition under 28 U.S.C. § 2254 for a writ of habeas corpus (# 2). Wronke challenges an order entered on October 5, 1995, in the circuit court of Champaign County. The court found Wronke in indirect civil contempt of court and ordered him to be transported to the Champaign County Correctional Center until he purged himself of the contempt. Wronke's habeas petition was twice dismissed for failure to exhaust state

court remedies. The Seventh Circuit Court of Appeals reversed both orders dismissing the petition. In its Order dated October 19, 1998, the Seventh Circuit stated that "this case shall be assigned to a different district court judge who shall conduct further proceedings with respect to Wronke's § 2254 petition with the utmost dispatch." On October 20, 1998, the matter was reassigned to this court. Following careful consideration of the merits of Wronke's claims, the petition for writ of habeas corpus (# 2) is DENIED.

## FACTS

On July 12, 1990, Elinor Wronke n/k/a Elinor Canady filed a petition for dissolution of marriage in the circuit court of Champaign County. The case was originally assigned to Judge Harold L. Jensen. A judgment dissolving the marriage of the parties was entered on August 30, 1990. On July 15, 1991, a memorandum order was entered which resolved all remaining issues, including the amount of child support to be paid by Wronke for the two minor children of the parties. On February 6, 1992, Judge Jensen was recused from further proceedings in the case. The case was assigned to Judge Ann A. Einhorn. Wronke was represented by an attorney in the proceedings until his attorney withdrew as counsel on October 15, 1993. From that point on, Wronke appeared pro se. On October 26, 1993, Judge Einhorn ordered that Wronke was to have no visitation with his children and was to have no contact whatsoever with the minor children. On August 31, 1994, Judge Einhorn recused herself from hearing any further matters in the case. On September 6, 1994, the case was reassigned to Judge Jeffrey B. Ford for further proceedings. After Judge Ford ruled on various matters in the case, Wronke filed a motion for substitution of judge on March 21, 1995. Again, on August 25, 1995, Wronke made an oral motion for Judge Ford to recuse himself. The motions were denied.

On October 5, 1995, Judge Ford found Wronke in indirect civil contempt of court and ordered that he was to be transported to the Champaign County Correctional Center until he purged himself of the contempt order. Judge Ford stated that Wronke could purge the contempt by "removing or causing to be removed, the names of his children

from the sign along State Route 49 within 14 days of this order" and by "paying the child support arrearage of $44,226.20."

Wronke appealed, and the Illinois Appellate Court, Fourth District, affirmed the circuit court's order. *In re Marriage of Wronke*, 281 Ill.App.3d 1150, 233 Ill.Dec. 779, 701 N.E.2d 844, No. 4–95–0800 (July 17, 1996) (unpublished order). The court noted that Wronke failed to file a report of the proceedings of the hearing held on October 5, 1995. Accordingly, the court assumed that all of the trial court's findings of fact were true and correct. *Wronke*, No. 4–95–0800, slip op. at 3. The court first held that Wronke was properly found in contempt of the order prohibiting him from using his children's names and pictures in a public forum. *Wronke*, No. 4–95–0800, slip op. at 4–7. It next determined that Wronke was properly found in contempt of the order setting child support. The court stated:

> [T]he trial court concluded that [Wronke] failed to demonstrate an inability to pay child support as ordered, thus his failure to do so was wilful and contumacious. The court noted that [Wronke] has shown that he in fact has access to funds he could use to pay child support when he has been able to file numerous lawsuits and appeals throughout the dissolution proceedings, including a lawsuit against most of the judges involved in those proceedings.
>
> As there is no transcript of the evidence and as [Wronke] only alleges on appeal a reduction in his income based on evidence apparently not before the court, we must assume the trial court acted properly. Accordingly, the trial court properly concluded that [Wronke] failed to raise a valid defense of inability to pay the amount of the arrearage. *Wronke*, No. 4–95–0800, slip op. at 8.

The court also rejected Wronke's claim that Judge Ford should have recused himself because he was a defendant in a federal civil rights case filed by Wronke. It noted that "the record is void of any evidence that the court was biased." *Wronke*, 4–95–0800, slip op. at 9.

After the appellate court affirmed the circuit court's contempt order, Wronke filed a petition for leave to appeal with the Illinois Supreme Court. Leave to appeal was denied

on October 2, 1996. *Canady v. Wronke*, 168 Ill.2d 584, 219 Ill.Dec. 560, 671 N.E.2d 727 (1996). Wronke then filed a petition for certiorari to the United States Supreme Court. This petition was denied on January 21, 1997 (*Wronke v. Canady*, —— U.S. ——, 117 S.Ct. 777, 136 L.Ed.2d 721 (1997)) and rehearing was denied on March 3, 1997 (*Wronke v. Canady*, —— U.S. ——, 117 S.Ct. 1122, 137 L.Ed.2d 322 (1997)). Wronke has filed various other appeals regarding other related proceedings. However, Wronke clearly has exhausted his state court remedies as to the October 5, 1995, order of indirect civil contempt. That is the only matter now before this court.

## ANALYSIS

"Normally, the federal courts do not become involved in child support disputes, as this is one of the matters most clearly allocated to the state courts in our federal system." *Puchner v. Kruziki*, 111 F.3d 541, 542 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 166, 139 L.Ed.2d 109 (1997). In this case, as in *Puchner*, Wronke's failure to pay child support became a federal case when he sought a writ of habeas corpus under 28 U.S.C. § 2254 "challenging his incarceration pursuant to a contempt order entered by the state court judge." See *Puchner*, 111 F.3d at 542.

■ Wronke filed his petition after April 24, 1996, so this court's analysis is governed by 28 U.S.C. § 2254 as amended by Section 104 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). A federal court may grant a writ of habeas corpus when, under a state court judgment, a person is held in custody in violation of the United States Constitution. 28 U.S.C. § 2254; *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir.1996). Before a federal court will consider the merits of a habeas petition, the applicant must fairly present any federal claims in state court first, or risk procedural default. *United States ex rel. Walton v. Gilmore*, 1998 WL 485679 (N.D.Ill.1998).

## I. CONSTITUTIONAL CLAIMS

Wronke first argues that he is entitled to habeas corpus relief because he was denied his request for a jury trial and has, in fact, spent much more than six months in custody. Wronke also argues that his "incarceration for civil contempt interminably was contrary and repugnant to existing law constitutionally." These claims were not raised in Wronke's appeal from the October 5, 1995, order. Accordingly, the claims could be considered procedurally defaulted. However, this court will address Wronke's constitutional claims on the merits pursuant to 28 U.S.C. § 2254(b)(2) because the record shows the claims are clearly without merit.

■ It is true that a criminal contemnor cannot be imprisoned more than a total of six months without a jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). However, a jury trial is not required in civil contempt proceedings. *Cheff*, 384 U.S. at 377, 86 S.Ct. 1523; see also *Hicks v. Feiock*, 485 U.S. 624, 637, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) (it is only when the punishment is criminal in nature that federal constitutional protections must be applied in the contempt proceeding).

■ Civil and criminal contempt differ in important respects. *Puchner*, 111 F.3d at 544. " 'If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.' " *Hicks*, 485 U.S. at 631, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). "[C]ivil contempt is a tool used by courts to compel compliance with their orders. The contemnor 'holds the keys to the jailhouse' in his own hands, and compliance produces an immediate release." *Puchner*, 111 F.3d at 543. In other words, imprisonment for civil contempt is "wholly avoidable." *Puchner*, 111 F.3d at 544. A civil or remedial contempt order is always dischargeable upon full compliance with the court's order. *Puchner*, 111 F.3d at 544.

■ In this case, the court determined that Wronke was in indirect civil contempt of court because he violated a court order when he put his children's names on a sign and because he failed to pay $44,226.20 in court ordered child support, which the court found he had the ability to pay. Wronke could

have avoided the contempt finding by complying with the terms of the circuit court's orders. In addition, Wronke could purge himself of the contempt, and secure his release from the Champaign County Correctional Center, by removing the names from the sign and by paying the overdue child support. Accordingly, Wronke's sanction is clearly civil in nature. See *Hicks*, 485 U.S. at 634–35 n. 7, 108 S.Ct. 1423; *United States v. Jones*, 880 F.2d 987, 989 (7th Cir.1989). Therefore, Wronke had no right to a jury trial before being incarcerated for civil contempt.

■ Wronke's challenge to the indefinite length of his incarceration also fails on the merits. Incarceration for civil contempt may continue indefinitely. *United States ex rel. Thom v. Jenkins*, 760 F.2d 736, 740 (7th Cir.1985); see also, *e.g.*, *Sheppard v. Fairman*, 1996 WL 166951 (N.D.Ill.1996). This is because the contemnor has the ability to secure his release by complying with the court's orders. Accordingly, a civil contemnor may be incarcerated until he either complies with the court's order or adduces evidence as to his present inability to comply with that order. See *United States v. Rylander*, 460 U.S. 752, 761, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983).

## II. FACTUAL ISSUES

Wronke also challenges the circuit court's order by arguing that the circuit court did not conduct a full and fair hearing regarding his payments and financial circumstances. In addition, Wronke argues that his motion to substitute judges should have been granted. These arguments were raised in Wronke's pro se appeal from the October 5, 1995, order and were specifically addressed by the state appellate court.

■ Federal courts will not consider an issue of federal law arising from a judgment of a state court if that judgment rests on a state law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Boerckel v. O'Sullivan*, 135 F.3d 1194, 1197–98 (7th Cir.1998), *cert. granted in part*, *O'Sullivan v. Boerckel*, —— U.S. ——, 119 S.Ct. 508, —— L.Ed.2d —— (1998). For example, where a state court rejects an argument for failure to comply with a state proce-

dural requirement, that decision rests on independent and adequate state grounds. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Walton*, 1998 WL 485679, *3. The United States Supreme Court explained in *Coleman:*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws. *Coleman*, 501 U.S. at 730, 111 S.Ct. 2546.

■ In this case, Wronke failed to provide the appellate court with a report of the proceedings of the October 5, 1995, hearing. Under Illinois law, the responsibility for preserving and presenting a sufficient record of the asserted error falls on the appellant. *People v. Stewart*, 179 Ill.2d 556, 228 Ill.Dec. 708, 689 N.E.2d 1129, 1133 (Ill.1997). When the appellant fails to provide a complete record, a court of review indulges in every reasonable presumption favorable to the judgment. *Stewart*, 228 Ill.Dec. 708, 689 N.E.2d at 1133. Any doubts raised by the incompleteness of the record are resolved against the appellant and the reviewing court presumes that the trial court's ruling conformed with the law. *Stewart*, 228 Ill.Dec. 708, 689 N.E.2d at 1133; *People v. McDuffee*, 299 Ill.App.3d 283, 233 Ill.Dec. 682, 701 N.E.2d 532, 533 (1998).

■ Wronke failed to provide the appellate court with a transcript of the October 5, 1995, hearing to support his argument that the evidence was not sufficient to support the trial court's finding that he failed to demonstrate an inability to pay the child support arrearage. Based upon well established Illinois law, the appellate court in this case therefore assumed that the trial court's findings of fact were true and correct. *Wronke*, No. 4–95–0800, slip op. at 3. Accordingly, Wronke's claim is procedurally defaulted because it was rejected by the appellate court on independent and adequate state grounds. Wronke has not attempted to show cause for the default and, therefore, this court finds that this claim is procedurally defaulted. See *Walton*, 1998 WL 485679 at *4.

The appellate court also rejected Wronke's argument that Judge Ford should have recused himself because he was a defendant in a civil rights case filed by Wronke. Under § 2254:

An application for a writ of habeas corpus ... shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

The "unreasonable application" provision "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" *Lindh v. Murphy,* 96 F.3d 856, 870 (7th Cir.1996) (en banc), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

 This court finds that the appellate court's decision was not an unreasonable application of clearly established Federal Law. Under Federal Law, a judge is not disqualified from hearing a case merely because a disgruntled litigant files a lawsuit against the judge. *Andersen v. Roszkowski,* 681 F.Supp. 1284, 1289 (N.D.Ill.1988), *aff'd,* 894 F.2d 1338 (7th Cir.1990) (citing *In re Martin–Trigona,* 573 F.Supp. 1237, 1242–43 (D.Conn.1983), *app. dismissed,* 770 F.2d 157 (2d Cir.1985); *United States v. Grismore,* 564 F.2d 929, 933 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978)).

In addition, in an action brought under 28 U.S.C. § 2254, the factual determinations of the state appellate court are "presumed to be correct." 28 U.S.C. § 2254(d); *Walton,* 1998 WL 485679 at *6. As a result, this court must presume correct the appellate court's findings that Wronke failed to raise a valid defense of inability to pay the overdue child support and that the record is void of any evidence that the circuit court was biased against him. See *Wronke,* No. 4–95–0800, slip op. at 8–9.

 Wronke's final argument is that the circuit court abused its discretion in November 1991 and December 1992 when it did not modify his child support obligation based upon a substantial change in his financial circumstances. This argument is totally without merit. It is well established that "'a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.'" *United States v. Rylander,* 460 U.S. 752, 756, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (quoting *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948)). This court further notes that Wronke is not entitled to federal court review of state court child support determinations. See *Puchner,* 111 F.3d at 542 (child support disputes are "clearly allocated to the state courts in our federal system").

IT IS THEREFORE ORDERED THAT the petition for writ of *habeas corpus* (# 2) is DENIED.

The clerk is directed to enter judgment in favor of Respondent and against Petitioner.