IN RE the MARRIAGE OF:

Heidi FRISCH, f/k/a Heidi Henrichs,
Petitioner-Respondent-Petitioner,

v.

Ronald J. HENRICHS,
Respondent-Appellant.

Supreme Court

*No. 2005AP534. Oral argument December 12, 2006.
—Decided July 17, 2007.*

2007 WI 102

(Also reported in 736 N.W.2d 85.)

1

3

4

For the petitioner-respondent-petitioner there were briefs by *Thomas L. Frenn, Kelly M. Dodd, George D. Mistrioty*, and *Petrie & Stocking S.C.*, Milwaukee, and oral argument by *Kelly M. Dodd.*

For the respondent-appellant there was a brief by *Richard J. Podell, Barbara J. Stippich*, and *Richard J. Podell & Associates, S.C.*, Milwaukee, and oral argument by *Richard J. Podell.*

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, reversing a judgment of the Circuit Court for Waukesha County, Ralph M. Ramirez, Judge. *Frisch v. Henrichs*, 2006 WI App 64, 290 Wis. 2d 739, 713 N.W.2d 139. We are asked to address whether the circuit court may use its remedial contempt power to craft a remedy where a party has consistently failed to provide tax returns and income information in a timely manner as required under statute, a divorce judgment, and a court order, but does produce the information before the contempt hearing.

¶ 2. The court of appeals reversed the circuit court, which found Ronald J. Henrichs (Ronald) in contempt for failing to produce tax information on an annual basis to his former wife Heidi Frisch, f/k/a Heidi Henrichs (Heidi), and for failing to timely report substantial changes in his income, as required under statute, their divorce judgment, a November 1995 court order, and a stipulation entered into between Ronald

5

and Heidi. The circuit court also held that the stipulation between the parties, which set a ceiling on the amount of Ronald's child support obligations for four years, was not in the best interests of the parties' children and was contrary to public policy. The circuit court ordered Ronald to pay Heidi $100,000 as compensation for Ronald's contemptuous conduct and also ordered Ronald to pay $32,000 of Heidi's attorney fees on grounds that he had engaged in overtrial.[1]

¶ 3. The court of appeals reversed, holding that the circuit court improperly employed remedial contempt because Ronald's contempt was no longer continuing at the time of the contempt hearing. The court of appeals noted that Ronald had provided Heidi with all the tax information before the contempt hearing; therefore, the contempt was no longer continuing and the circuit court was not authorized under Wis. Stat. ch. 785 to employ remedial contempt. The court of appeals also held that the stipulation between Ronald and Heidi was not contrary to public policy. The court of appeals reversed the circuit court's order that Ronald pay $100,000 to Heidi and also reversed the $32,000 overtrial award.

¶ 4. We reverse the court of appeals and hold that the circuit court properly employed remedial contempt in this case. Ronald's contempt was continuing at the time of the contempt hearing because, although he had provided Heidi with complete tax and income information at the time of the hearing, his failure to produce the information in a timely manner, as required, permitted him to evade exposure to the possibility of a

---

[1] Overtrial is a family law doctrine "that may be invoked when one party's unreasonable approach to litigation causes the other party to incur extra and unnecessary fees." *Zhang v. Yu,* 2001 WI App 267, ¶ 13, 248 Wis. 2d 913, 637 N.W.2d 754.

modification of his child support obligation and thereby deprived Heidi and their children of their traditional remedies under statutory law. The timely provision of information was an essential element of the court's order. Because Ronald could not and did not turn back time when he produced the required information too late to be acted on, his contempt was and is continuing within the legislative directive of Wis. Stat. § 767.27(2m).[2] This continuing contempt in relation to Wis. Stat. § 767.27(2m) gave the circuit court authority to fashion an alternative purge condition of $100,000 to allow Ronald to purge himself of his continuing contempt.[3] We also conclude that the stipulation between the parties was unenforceable because it was not in the best interests of the children and therefore contrary to public policy.

¶ 5. We therefore reverse the court of appeals and affirm the circuit court, which ordered Ronald to pay Heidi a sum of $100,000 for loss suffered as a result of Ronald's contempt and $32,000 in attorney fees for Ronald's overtrial.

## BACKGROUND

¶ 6. Ronald and Heidi divorced in 1993 after ten years of marriage. On August 16, 1993, Waukesha County Circuit Court Judge James Kieffer entered a judgment of divorce, which incorporated the parties' marital settlement agreement. The agreement awarded the parties joint legal custody of two minor children but gave primary physical placement to Heidi. In addition,

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] Satisfaction of an alternative purge condition terminates the continuing contempt of court.

7

it required Ronald to pay Heidi $600 per month in child support. Ronald represented that he would be able to pay this amount despite an annual income of only $11,000. A provision of the divorce judgment referenced Wis. Stat. § 767.263 (1993–94), which required child support obligors to report all substantial changes in income within 10 days to the clerk of court.[4] The agreement also provided that as long as Ronald had an obligation to pay support, he was to provide Heidi with a copy of his Form 1040 tax return, together with all schedules.

¶ 7. Eleven months after the divorce was final, Ronald obtained a $165,000 residential mortgage based on a sworn statement to the lender that his monthly income was $5852.03 (or roughly $70,225 per year). On January 24, 1995, Heidi moved for an increase in child support pursuant to Wis. Stat. § 767.32, for a finding of contempt based on Ronald's alleged failure to provide copies of his income tax returns, and for an award of costs and attorney fees. After several other motions were filed, Heidi's contempt motion was dismissed.

¶ 8. A hearing on the motion for increased child support was held on November 14, 1995. Ronald testified that the income figures on his loan application were false and that his annual income was truly about $30,000. The court found, however, that Ronald had fraudulently misrepresented his income, and it set a revised child support award of $1463 per month retroactive to February 1, 1995.[5] This amount represented

---

[4] The current statute (2005–06) requires notification to the county child support agency.

[5] The award was made retroactive to February 1, 1995, which was within days after Ronald was served with Heidi's motion.

25 percent of what Ronald purported to be his annual income on the loan application.[6] In addition, to monitor the situation, the court ordered Ronald to provide Heidi with copies of his annual personal and corporate tax returns by May 12 of each year as long as he had an ongoing child support obligation. Finally, the court found that Ronald had engaged in overtrial and ordered him to pay $5000 in attorney fees. This finding was followed by further litigation, including a motion by Ronald to reduce his child support obligation and a motion by Heidi to hold Ronald in contempt for his failure to pay child support.

¶ 9. On October 29, 1996, the parties entered into a stipulation modifying child support to $1050 per month and imposing a four-year moratorium on litigation. The parties stipulated that neither Ronald nor Heidi would seek a modification of the child support order before January 1, 2001, due to a change in economic circumstances, specifically income fluctuations.[7] The stipulation reiterated Ronald's continuing obligation to provide Heidi with copies of his tax returns.

¶ 10. At the hearing on the proposed stipulation, Heidi's attorney noted that each of the parties had been assisted by counsel and certified public accountants in negotiating and drafting the stipulation. Under questioning by the court, both parties represented that they had discussed the stipulation with their attorneys,

---

[6] The court noted that the task of figuring out Ronald's exact income was "a very troubled proceeding." Without any credible evidence of Ronald's income, the court imputed to Ronald an annual earning of $70,225.

[7] The parties could come to court due to a change in unforeseen circumstances, such as death of a child, and for the purpose of enforcing court orders.

understood the provisions, had no questions, and believed the stipulation to be in their children's best interests. Heidi's counsel noted that counsel for both parties explained that Wisconsin public policy discourages agreements that bar parents from seeking child support modifications. The court also explained to the parties that they could enter into the stipulation but that the court could not order the same. The parties said they understood, and the court approved the stipulation.

¶ 11. Except for a February 1999 stipulation modifying child support as a result of a change in dependent health and dental insurance, the parties remained out of court as agreed. After the moratorium's expiration date of January 1, 2001, Ronald filed motions on May 22, 2002, one to obtain primary placement of the parties' son, and a second to reduce his required child support payments to Heidi because the parties' daughter was vacating Heidi's residence. The court commissioner granted Ronald's motion to reduce his child support obligation on July 19, 2002, conditioned on the fact that the parties' daughter would reside with Ronald or reside in an apartment paid for by Ronald. The court commissioner reduced the amount of Ronald's monthly child support obligation to $691.89, effective August 10, 2002.

¶ 12. In August 2002 Heidi brought a pro se contempt motion against Ronald for his continuing failure to provide copies of his tax returns since 1996 and for dishonesty in reporting his income.[8] At a September 24, 2002, hearing on the motion, the court dismissed Heidi's contempt motion on the basis that

---

[8] At this point, the case had been transferred to Judge Ralph Ramirez, who presided over all subsequent proceedings.

Heidi had received the requested income tax returns from Ronald. At the hearing, Heidi also orally requested an increase in child support. The court directed Heidi to file a written motion relating to this request. The court set a hearing date for January 8, 2003, and ordered that Ronald's motion for change of placement be heard at that time.

¶ 13. On October 28, 2002, before the scheduled hearing of January 8, 2003, Heidi obtained counsel and immediately filed an amended motion seeking, among other things, the following: (1) Wis. Stat. § 806.07 relief from the court commissioner's July 2002 order reducing Ronald's child support obligation; (2) increased child support retroactive to May 2002; and (3) an award of attorney fees and expenses based on a claim that Ronald's motion to modify child support and his motion to modify placement were frivolous.

¶ 14. In support of the motion, Heidi alleged that Ronald had provided incomplete tax returns and fraudulently misrepresented his actual income with the intention of defrauding Heidi of child support to which she was entitled. Specifically, Heidi alleged that until July 2, 2002, Ronald had failed to provide personal and corporate tax returns required by the 1996 stipulation. After Heidi sought to have Ronald held in contempt for his failure to provide the tax information, Ronald provided Heidi with what he alleged were his personal and corporate tax returns at a July 2, 2002, hearing. Heidi alleged that after the hearing, she learned that Ronald had provided only partial returns for the years 2000 and 2001 and that these returns did not include all schedules. Heidi alleged that Ronald had still not provided her with complete personal and corporate tax returns for 1996 to 2001. Based on the returns she had received, Heidi

11

alleged that Ronald earned more income than he had disclosed.

¶ 15. After this motion was filed and before the scheduled hearing date of January 8, 2003, Heidi filed a flurry of requests for depositions and written discovery, followed by Ronald's motions to avoid and limit such discovery, and a motion for a protective order. Specifically, Heidi filed a notice of deposition and subpoena duces tecum on Ronald, demanding that Ronald submit to an oral examination and produce numerous documents, including the following: (1) copies of his complete personal state and federal income tax returns with W-2 statements and all schedules for the years 1999, 2000, and 2001; (2) copies of his complete corporate state and federal income tax returns with all schedules and attachments for the years 1999, 2000, and 2001; (3) copies of all corporate monthly balance sheets and monthly general ledgers for the years 1998, 1999, 2000, and 2001; and numerous other financial documents, such as copies of all stocks, bonds, mutual funds or similar assets, and copies of trust documents, life insurance statements, and so forth. Ronald thereafter filed a motion for protective order, as Ronald alleged, to protect himself from the undue burden of obtaining the "irrelevant and voluminous documents" requested by Heidi. The court, however, ordered Ronald to submit to a deposition. Heidi later alleged that at this deposition Ronald "provided really no information pertaining to his income [and] produced very little information pertaining to his assets."

¶ 16. At the January 8, 2003, hearing, the court was presented with a stipulation and order modifying placement of the parties' minor son with Ronald.[9] The

---

[9] An emergency court order in November 2002 transferred temporary placement of the parties' minor son to Ronald.

court approved the stipulation. Since Ronald now had primary placement of both children, the court ordered Ronald to cease paying child support to Heidi. The court held open the issue of Heidi's child support obligations to Ronald. At the hearing, the court also addressed Heidi's motion for a retroactive increase in child support. At that hearing, Heidi broadened her earlier request for an increase in child support by orally requesting an increase in child support retroactive to 1996, not just to May 2002. Testimony was taken at this hearing, but the court adjourned the hearing to a later date.

¶ 17. On May 20, 2003, the court addressed Heidi's request for relief under Wis. Stat. § 806.07 as well as her motion to increase child support. However, the motions remained unresolved, and the matter was again continued. After this hearing, Ronald moved to dismiss Heidi's motion to retroactively modify child support and also moved to limit the time frame of evidence relating to his income to the time period subsequent to Heidi's motion dated October 28, 2002.

¶ 18. Later in October 2003 Heidi filed another contempt motion against Ronald for his failure to provide notice that his income had substantially increased and for failure to provide copies of his tax returns. Specifically, Heidi alleged that Ronald violated the terms of the judgment of divorce by failing to notify the clerk that his income had substantially increased. In addition, Heidi alleged that Ronald breached the 1996 stipulation and violated the November 14, 1995, court order, which required Ronald to provide Heidi with his completed and filed personal and corporate tax returns annually. Heidi attested that she asked Ronald for his tax information every year, but he continually refused to provide it.

13

¶ 19. The next hearing was on October 22, 2003, where the court denied Ronald's motion to limit the scope of evidence as to his income. The court also deferred action on Heidi's motion to retroactively modify child support, and set a hearing on the support and contempt issues for November 6, 2003. At the November 6 hearing, however, the court held these issues in abeyance. The court instead addressed whether it should uphold the 1996 joint stipulation. The court found that the parties had entered into the stipulation freely and voluntarily, and that the purpose of the stipulation was to bring to an end the contentious legal proceedings. However, the court asked the parties to submit briefs addressing whether the agreement violated public policy. The matter was therefore continued to November 25, 2003.

¶ 20. At the November 25 hearing, the court found no fraud or intentional misrepresentation in the formation of the 1996 stipulation. However, the court did find that Ronald had engaged in a substantial amount of misrepresentation, fraud, and game-playing as to what constitutes income since entering into the stipulation. The court concluded that the stipulation was not contrary to public policy and would be upheld because it represented the parties' intentions. The court did find, however, that Ronald failed to cooperate with the 1996 stipulation by failing to supply Heidi with the necessary tax information. The court concluded that it was Ronald's lack of cooperation that led the parties to court. The court stated that Ronald had engaged in overtrial and had been in contempt of court for not supplying the information. Therefore, the court concluded that there would need to be an offset of Heidi's child support obligations but that it was unsure of what that would be.

14

¶ 21. At the next hearing on April 7, 2004, the court reversed its prior ruling upholding the stipulation. The court observed that the stipulation was freely and voluntarily entered into but that it was not fair and equitable in light of later-revealed circumstances. Ultimately, the court concluded that the stipulation was not in the children's best interests and had denied them support. The court declared the stipulation to be against public policy and asked the parties to brief the issue of what remedy would be appropriate.

¶ 22. At a June 15, 2004, hearing, Heidi argued that Wis. Stat. § 767.32(1m), which provides that a court "may not" revise the amount of child support, is phrased permissively and allows the court discretion to retroactively modify support. Additionally, Heidi argued that under Wis. Stat. § 767.27(2m), Ronald's failure to disclose his assets should have allowed a Wis. Stat. ch. 785 contempt proceeding, which would have granted the court authority and broad discretion to create a monetary sanction in an amount relating to what Heidi claimed Ronald owed for child support.

¶ 23. The court reaffirmed its holding that the stipulation was contrary to public policy. The court concluded that Ronald had not in any way complied with the requirement to provide Heidi with tax information during the relevant time period. Furthermore, the court held that Ronald breached his obligation to notify the court and Heidi of his changes in income. The court determined that if child support had been based on Ronald's true income, he would have paid approximately $222,000 more in support since October 1, 1996, up until October 31, 2002.[10] The court concluded that

---

[10] This amount was based on Heidi's calculations, which imputed to Ronald additional income that was available for

pursuant to Wis. Stat. § 767.32(1m) it did not have the authority to modify Ronald's support obligation retroactively. However, the court stated that it did have the authority to sanction him for contempt and to compensate Heidi for losses suffered as a result of that contempt. The court held that Ronald had engaged in overtrial and that he was in contempt of court for not supplying income information as ordered. The court ordered a $100,000 sanction against Ronald to compensate Heidi and the children for losses suffered as a consequence of his contempt. The court further ordered Heidi to pay 17 percent of her gross income as child support for the parties' son, but suspended the obligation at least until after the court addressed Heidi's overtrial claim.

¶ 24. On November 12, 2004, the court conducted a hearing on Heidi's claim of overtrial by Ronald. The court found that approximately $32,000 of Heidi's attorney fees and expenses were reasonably attributable to Ronald's overtrial of the matter. The court ordered

child support purposes beyond the figures that were reported as gross income on Ronald's tax returns. Although Ronald had an accountant who testified to the errors in Heidi's calculations, the court found that Heidi's calculations were credible. The court noted that Ronald's accountant was qualified and had an extensive background in accounting. However, the court found that Ronald's accountant "was incorrect in his assessment of income available to [Ronald] and what was personally available to him." The court noted that the accountant did not take into account that "the accountant version and the income tax version of what someone could be taxed on are not necessarily the same as to what . . . could be available for imputing income for child support purposes." Citing Wis. Admin. Code DWD § 40.02(3), (13), and (14), the court noted that, for the purposes of computing income available for child support, other factors must be considered, such as corporate income and shareholder loans.

16

Ronald to pay this additional amount to Heidi and suspended her new child support obligation until Ronald had paid the contempt sanction and overtrial award to Heidi. Ronald appealed the circuit court's decision.

¶ 25. The court of appeals reversed the circuit court's contempt order, stating that it lacked "the necessary hallmarks of remedial contempt." *Frisch,* 290 Wis. 2d 739, ¶ 2. The court also reversed the circuit court's overtrial award and remanded the case to determine the appropriate commencement date for Heidi's support payments. *Id.,* ¶ 3.

¶ 26. In reaching its decision, the court of appeals focused on whether remedial contempt was properly employed. *Id.,* ¶ 30. The court concluded that remedial contempt was not properly employed because remedial sanctions may be imposed only to terminate a continuing contempt of court. *Id.* The court noted that the contempt in this case was Ronald's failure to provide copies of his tax returns. *Id.* However, because the copies were produced prior to any pronouncement of contempt, the contempt was no longer continuing. *Id.* In addition, the court stated that any remedial contempt order must be purgeable and that there was no purgeable condition in this case. *Id.*

¶ 27. The court found additional fault with the $100,000 contempt sanction. The court held that, contrary to the circuit court's conclusion, the stipulation was not void as a matter of public policy.[11] *Id.,* ¶ 25 n.6. Therefore, the $100,000 contempt sanction was improper because there was no loss or injury resulting from Ronald's contempt during 1996–2001. During that pe-

---

[11] The circuit court also held that there was no fraud in the inducement of the 1996 stipulation, citing the legal and tax assistance as factors in showing that Heidi entered into the stipulation freely, knowingly, and voluntarily.

17

riod Heidi was barred from seeking a change in support based upon Ronald's increased income.[12] *Id.,* ¶ 31.

¶ 28. Finally, the court of appeals reversed the overtrial award of $32,000 because it was premised on the circuit court's contempt finding, which was reversed. *Id.,* ¶ 37. We granted Heidi's petition for review of the court of appeals decision.

---

[12] The court of appeals declined to address the question of whether Heidi was entitled to relief under Wis. Stat. § 806.07. *Frisch v. Henrichs,* 2006 WI App 64, ¶ 35, 290 Wis. 2d 739, 713 N.W.2d 139. Heidi had previously argued that the court could sidestep a Wis. Stat. § 806.07 analysis, and the circuit court had granted relief under contempt and not § 806.07. *Id.,* ¶ 34. In addition, Ronald argued that § 806.07 did not apply. *Id.,* ¶ 35. Therefore, the court declined to consider this issue. *Id.* Because we find that remedial contempt was properly employed, we also do not address whether Heidi was entitled to relief under § 806.07.

The court of appeals also addressed Ronald's argument that the circuit court misused its discretion when it adopted Heidi's proposed findings and judgment that contained substantial findings, conclusions of law, and judgment provisions not originally ordered by the court. *Id.,* ¶ 38. The court held that its reversal of the contempt and overtrial provisions of the judgment rendered that issue moot. *Id.,* ¶ 39. Because this issue was not raised on appeal, we do not address it.

The court also addressed Ronald's argument concerning the proper commencement date of Heidi's child support obligations and whether the circuit court expressly suspended the obligations until Heidi received payment in full from Ronald. *Id.,* ¶ 40. Because the court of appeals reversed the circuit court's use of contempt, it also reversed the suspension of Heidi's child support obligations. *Id.,* ¶ 41. Because we affirm the circuit court's use of contempt, we also affirm the suspension of Heidi's child support obligations. Because the issue was not raised on appeal, we do not address the propriety of Heidi's proposed findings of fact, conclusions of law, and judgment that were adopted by the circuit court and which suspended Heidi's obligations until Ronald paid her in full.

## STANDARD OF REVIEW

¶ 29. This case presents the issue of whether the circuit court had authority under Wis. Stat. ch. 785 to order payment for loss suffered as a result of contemptuous conduct—specifically the untimely production of financial information and the failure to report substantial changes in income—as a purge condition for contempt of court. In a broader sense, this issue requires the court to determine whether the circuit court had authority under Wis. Stat. ch. 785 to employ remedial contempt under these circumstances. Such an issue, which requires the interpretation and application of a statute, is a question of law that we review de novo.[13] *See Evans v. Luebke,* 2003 WI App 207, ¶ 16, 267 Wis. 2d 596, 671 N.W.2d 304; *Shepard v. Circuit Court for Outagamie County,* 189 Wis. 2d 279, 286, 525 N.W.2d 764 (Ct. App. 1994).

¶ 30. This case also requires us to review the 1996 stipulation agreement between the parties. The construction of a written contract is a question of law that we review de novo. *Krieman v. Goldberg,* 214 Wis. 2d 163, 173, 571 N.W.2d 425 (1997).

## ANALYSIS

¶ 31. In this case, the circuit court found Ronald in contempt for failing to timely provide copies of his

---

[13] The issue in this case concerns the authority of the court to order remedial contempt. It should not be confused with the issue of whether the circuit court's finding of contempt was proper. Such an issue is reviewed under an erroneous exercise of discretion standard. *See City of Wis. Dells v. Dells Fireworks, Inc.,* 197 Wis. 2d 1, 23, 539 N.W.2d 916 (Ct. App. 1995).

tax returns to Heidi, as required under the 1995 order, the 1996 stipulation, and under Wis. Stat. § 767.27(2m). In addition, the court found that Ronald did not report substantial changes in income, as required under the divorce judgment and Wis. Stat. § 767.263 (1993–94). Wisconsin Stat. § 767.27(2m) specifically provides that "[a] party who fails to furnish the information *as required* by the court under this subsection may be proceeded against for contempt of court under ch. 785."[14] (Emphasis added.)

¶ 32. "A court's power to use contempt stems from the inherent authority of the court. The power may, however, within limitations, be regulated by the legislature." *Griffin v. Reeve,* 141 Wis. 2d 699, 706 n.4, 416 N.W.2d 612 (1987). "Despite the fact that the power exists independently of statute, this court ruled [in 1880], that when the procedures and penalties of contempt are prescribed by statute, the statute controls." *Douglas County v. Edwards,* 137 Wis. 2d 65, 88, 403 N.W.2d 438 (1987) (citing *State ex rel. Lanning v. Lonsdale,* 48 Wis. 348, 367, 4 N.W. 390 (1880)). This formulation necessarily presents questions of whether

---

[14] Wis. Stat. § 767.27(2m) provides:

In every action in which the court has ordered a party to pay child or family support under this chapter, including an action to revise a judgment or order under s. 767.32, the court shall require the parties annually to exchange financial information. *A party who fails to furnish the information as required by the court under this subsection may be proceeded against for contempt of court under ch. 785.* If the court finds that a party *has failed* to furnish the information required under this subsection, the court may award to the party bringing the action costs and, notwithstanding s. 814.04(1), *reasonable attorney fees.*

Wis. Stat. § 767.27(2m) (emphasis added).

the legislature has fully prescribed the procedures and penalties of contempt and, if it has, whether the limitations imposed impair the inherent authority of the court. The legislature may regulate and limit the contempt power "so long as the contempt power is not rendered ineffectual." Note (Wis. Stat. § 785.02), § 11, ch. 257, Laws of 1979, at 1355.

¶ 33. The legislature has regulated contempt in Wis. Stat. ch. 785. Contempt of court is defined as intentional misconduct or disobedience towards the authority of a court, and includes failure to produce a record or document. Wis. Stat. § 785.01(1)(a), (b), and (d). Contempt may be punished either by a punitive sanction or a remedial sanction.[15] Wis. Stat. § 785.02.

¶ 34. A punitive sanction is "imposed to punish a past contempt of court for the purpose of upholding the authority of the court." Wis. Stat. § 785.01(2). "A court issuing a punitive sanction is not specifically concerned with the private interests of a litigant." *Diane K.J. v. James L.J.,* 196 Wis. 2d 964, 969, 539 N.W.2d 703 (Ct. App. 1995). A punitive sanction requires that a district attorney, attorney general, or special prosecutor formally prosecute the matter by filing a complaint and following the procedures set out in the criminal code. Wis. Stat. § 785.03(1)(b).

¶ 35. A remedial sanction, on the other hand, is civil and is "imposed for the purpose of terminating a

[15] The prior statutory distinction between civil and criminal contempt has been abolished. *See* Note (Introduction to Wis. Stat. ch. 785), § 11, ch. 257, Laws of 1979, at 1354. The contempt statute now draws a distinction based on the purpose of the sanction sought to be imposed. *Id.*

*continuing* contempt of court." Wis. Stat. § 785.01(3) (emphasis added).[16] Remedial contempt is concerned with the private interests of the litigant and is "designed to force one party to accede to another's demand." *See State v. King,* 82 Wis. 2d 124, 130, 262 N.W.2d 80 (1978). A person aggrieved by another person's contempt may file a motion for imposition of a remedial sanction for the contempt, and the court may impose an authorized sanction. Wis. Stat. § 785.03(1)(a). Remedial sanctions may include imprisonment, forfeitures, and "[p]ayment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court." Wis. Stat. § 785.04(1)(a), (b), and (c).

¶ 36. This case involves the circuit court's use of remedial contempt, not punitive contempt. The contempt motion against Ronald was brought by Heidi, not by a prosecutor. Neither party contends that punitive contempt is present. Therefore, we determine whether remedial contempt was properly employed in this case.

¶ 37. Wisconsin Stat. § 785.01(3) allows a court to impose a remedial sanction for the purpose of terminating a *continuing* contempt of court. The parties dispute whether remedial contempt was properly employed in this case because they dispute whether Ronald's contempt was continuing at the time the circuit court found Ronald in contempt. Ronald defines his contempt as his failure to provide tax returns and income information on a timely basis, and he alleges that he provided the tax returns and income information before the contempt hearing. Therefore, he argues, his con-

---

[16] Wisconsin Stat. § 758.01(3) defines "remedial sanction." " 'Remedial sanction' means a sanction imposed for the purpose of terminating a continuing contempt of court."

22

tempt was no longer continuing at the time of the hearing, and the circuit court erred when it ordered payment of $100,000 as a sanction.

¶ 38. Heidi argues that Ronald's contempt was still continuing at the time of the contempt hearing because, although Ronald finally produced the tax returns and other income information, he failed to produce them in a timely manner as required. She argued that it was impossible in 2003 to produce information in 1996. Because Ronald was never able to turn back time to produce the documents in a timely manner, Ronald's contempt was and is continuing.

¶ 39. To determine the proper interpretation of Wis. Stat. § 785.01(3), we apply its plain meaning and interpret the statute to avoid unreasonable and absurd results. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110. We may read this statute in pari materia with related statutes to aid in a correct interpretation. *Perra v. Menomonee Mut. Ins. Co.*, 2000 WI App 215, ¶ 9, 239 Wis. 2d 26, 619 N.W.2d 123.

¶ 40. Although Chapter 785 is a separate free-standing chapter, it frequently works in tandem with Chapter 767 (Actions Affecting the Family). The 2005–06 Wisconsin Statutes contain at least 11 references in Chapter 767 to contempt under Chapter 785. *See* Wis. Stat. §§ 767.117(3); 767.401(1)(e); 767.43(5); 767.471(5)(b)2.b.; 767.513(2m)(c); 767.54; 767.553(5)(b); 767.57(1h); 767.75(6)(a) and (b); 767.77(3)(b); and 767.78(2). Wisconsin Stat. § 767.54 is the renumbered and amended former Wis. Stat. § 767.27(2m) (2003–04). The chapter contains other references to "contempt" but

does not tie them to Chapter 785. *See, e.g.,* Wis. Stat. §§ 767.215(2)(h), (i), (j); 767.407(6); 767.501(2)(c); 767.55(2)(am).

¶ 41. Some of the references in Chapter 767 to Chapter 785 deal with contempt that can be easily purged. For instance, Wis. Stat. § 767.401(1)(a) (2005–06) permits the court to order the parties in a divorce "to attend a program specified by the court concerning the effects on a child of a dissolution of the marriage." A party who fails to attend such a program as ordered "may be proceeded against under ch. 785 for contempt of court." Wis. Stat. § 767.401(1)(e). When the party attends the program ordered, the contempt is purged.

¶ 42. On the other hand, there are sections of the chapter that deal with contempt that can no longer be purged by compliance with an order. For instance, Wis. Stat. § 767.43(5) (2005–06) provides: "(5) Interference With Visitation Rights. Any person who interferes with visitation rights under sub. (1) or (3) may be proceeded against for contempt of court under ch. 785, except that a court may impose only the remedial sanctions specified in s. 785.04(1)(a) and (e) against that person."

¶ 43. If a parent were to interfere with another parent's established visitation rights on an especially important occasion, the contempt could not be purged by permitting the child to resume visitation after the important occasion had passed. A monetary sanction would be the only practical remedy to purge the contempt. Even a change in visitation rights could not change the past interference.

¶ 44. Wisconsin Stat. § 767.27(2m) (2003–04) is especially relevant in this case. It provides:

> In every action in which the court has ordered a party to pay child or family support under this chapter,

including an action to revise a judgment or order under s. 767.32, the court shall require the parties annually to exchange financial information. A party who fails to furnish the information as required by the court under this subsection may be proceeded against for contempt of court under ch. 785. If the court finds that a party has failed to furnish the information required under this subsection, the court may award to the party bringing the action costs and, notwithstanding s. 814.04 (1), reasonable attorney fees.

¶ 45. This statute specifically states that "A party who fails to furnish the information *as required by the court* . . . may be proceeded against for contempt of court under ch. 785." Wis. Stat. § 767.27(2m) (emphasis added).

¶ 46. In this case, in 1995, the circuit court required that Ronald "by May 12th of every year commencing in 1996 . . . as long as Ron has child support obligations . . . produce his completed and filed personal and corporate tax returns . . . [for submission] to Ms. Frisch." The fact is, Ronald did not comply with the May 12 annual deadlines as required, and he is no longer able to comply with the time element of the court's order.

¶ 47. Although Ronald did produce all the required documents before the circuit court found him in contempt, his contempt was continuing under Wis. Stat. § 767.27(2m) because his production of documents came too late to undo the problems he had created by failing to produce documents on time.[17] Producing documents was only part of the court's order. Producing documents *on time,* for all the years in which child

---

[17] As Charles Dickens wrote, "Nothing can undo [the past]; nothing can make it otherwise than as it was." Charles Dickens, *David Copperfield* 432 (Dodd, Mead & Co., 1943) (1850).

support was due, was an equal part of the order. Failure to *timely* produce income information "as required" was really the essence of Ronald's contempt because it shielded him from exposure to regular, contemporary court-ordered modifications of child support. If Ronald had supplied the information timely, he would likely have been paying more support than he did. By his repeated failures, Ronald deprived Heidi of the information necessary to seek the periodic modification of support she was entitled to request under the law, and he deprived the court of its authority to timely modify its child support order. The contempt was continuing because Ronald's failure to comply with the court order deprived Heidi of her ability to utilize traditional remedies in the law. Thus, we cannot agree with the court of appeals that when Ronald turned over the tax documents, "any prior contempt was no longer ongoing." *See Frisch*, 290 Wis. 2d 739, ¶ 30.

¶ 48. The court of appeals found that remedial contempt was improper in this case because it lacked "one indispensable feature of remedial contempt," that it be purgeable. *Id.*

¶ 49. In light of Wis. Stat. § 767.27(2m), this interpretation of Wis. Stat. § 785.01(3) is too limited. Wisconsin law has been modernized, and a purge condition in the mid-1970s is not the same as a purge condition today.

¶ 50. Chapter 295 of the 1977 statutes contained four sections on "Contempts in Civil Actions." Wisconsin Stat. § 295.02 (1977) regarding "Sanctions," read in part:

> Every court of record may, in the exercise of its equitable powers, enforce the rights or remedies of a

party to an action or proceeding by imposing on any person found in contempt under s. 295.01 the following sanctions:

(1)(a) If an actual loss or injury has been produced to any party by the misconduct of the contemnor . . . the court may order the defendant to pay such party a sum sufficient to compensate the party for losses, costs, and expenses. . . .

. . . .

(2)(a) If the misconduct proved consists of an omission to perform some act or duty which is yet in the power of a party to perform in part or in full . . . the party . . . may be imprisoned until the party . . . performs such act or duty and pays the costs and expenses of the proceedings.

. . . .

(4) *A person imprisoned shall be released upon purging by compliance with the court's order.*

(Emphasis added.)

¶ 51. The 1979 legislature revised the law. It repealed Chapter 295 and created Chapter 785, and it abolished the distinction between civil and criminal contempt:

The approach adopted here is the one proposed in Dobbs, *Contempt of Court: A Survey,* 56 Cornell L. Rev. 183, 247 (1971). Under this approach, the statute does not attempt to draw a distinction between civil and criminal contempt. Rather the distinction is drawn between the purpose of the sanction sought to be imposed, and the procedures to be followed depend upon the sanction sought. This approach, the council believes, will eliminate most of the confusion that has previously existed in the law of contempt, provide a

27

clear and certain basis for determining which sanction to seek, and specify the procedures to be followed depending upon the sanction sought.

Note (Introduction to Wis. Stat. ch. 785), § 11, ch. 257, Laws of 1979, at 1354.

¶ 52.　As noted above, a remedial sanction is now defined as "a sanction imposed for the purpose of terminating a continuing contempt of court." Wis. Stat. § 785.01(3).　The Judicial Council explained remedial sentences in these terms:

> Traditionally, a remedial sanction was the type of sanction imposed for civil contempt. The purpose of the sanction was remedial in that it was designed to force a person into complying with an order of the court and terminating a present contempt of court. That concept is continued here, even though without the civil contempt designation. The definition makes it clear that a remedial sanction is appropriate only when the contempt is continuing, and cannot be imposed if for any reason the contempt has ceased, even as a result of the settlement of the case. This is consistent with prior law.

Note (2) (Wis. Stat. § 785.01(3)), § 11, ch. 257, Laws of 1979, at 1355.

¶ 53.　Hence, the real question today is whether the contempt is continuing. If the contempt is continuing, the court has been given specific authority in Wis. Stat. § 785.04 to impose:

> (a) Payment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court.[18]

> (b) Imprisonment if the contempt of court is a type included in s. 785.01(1)(b), (bm), (c) or (d). The impris-

---

[18] *Compare* Wis. Stat. § 295.02(1)(a) (1977). *See* ¶ 50 above.

28

onment may extend only so long as the person is committing the contempt of court or 6 months, whichever is the shorter period.

(c) A forfeiture not to exceed $2,000 for each day the contempt of court continues.

(d) An order to ensure compliance with the prior order of the court.

(e) A sanction other than the sanction specified in pars. (a) to (d) if it expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court.

¶ 54. Under the circumstances in the present case, an order under paragraph (d) to ensure compliance with the prior order of the court is not possible. It would be like trying to remedy the interference with an important visitation that cannot be rescheduled. Paragraphs (b) and (c) are helpful only to enforce an alternative purge condition. Hence, the court is forced to turn to paragraph (a) or paragraph (e) to provide relief to the party injured by contempt.

¶ 55. This court has put its imprimatur on a broad interpretation of remedial contempt in two important cases.

¶ 56. The first is *Griffin v. Reeve,* 141 Wis. 2d 699, 416 N.W.2d 612 (1987). In that case the court was confronted with a contemnor who had failed to pay child support before a child reached the age of 18. Once his child reached the age of majority, the contemnor insisted that the circuit court lost its jurisdiction to impose contempt. This court rejected all the contemnor's arguments that the contempt was no longer ongoing. It said:

We conclude that the purpose of the contempt proceeding . . . is . . . to coerce Mr. Reeve into complying with

29

an existing court order. . . . [T]he force of the order does not expire until the parent complies. A parent's failure to pay child support after the child reaches majority is a continuing disobedience of a court order. The contempt is not past; it is ongoing.

*Griffin*, 141 Wis. 2d at 708.[19]

¶ 57. More significant for this case, however, is the fact that the *Griffin* court proceeded to judgment *after* the contemnor had "paid the amount due under the support order." *Id.* at 700. Rejecting any notion that the contempt was not continuing or had been purged by the contemnor's payment, this court remanded the case so that the circuit court could consider attorney fees, reasonable court costs, and court-assessed interest. *Id.* at 700, 709.

¶ 58. The second case, with broader ramifications for contempt law, is *Larsen v. Larsen,* 165 Wis. 2d 679, 685, 478 N.W.2d 18 (1992). In *Larsen,* we stated that "[i]t is within the circuit court's inherent authority to grant purge conditions which allow contemnors to purge their contempt outside of complying with the court order which led to the contempt." A unanimous *Larsen* court explained:

> At one time, the statutes required that civil contempt situations be purgeable. *See* sec. 295.02(4), Stats. 1975. *The current statutes do not contain such a requirement* other than the provision that a person may be imprisoned for civil contempt "only so long as the

---

[19] In *Griffin v. Reeve,* 141 Wis. 2d 699, 704–05, 416 N.W.2d 612 (1987), the court alluded to the pervasive problems of failure to pay child support. It was impressed that several provisions of Chapter 767 (Family Law) namely, Wis. Stat. §§ 767.29(1), 767.30(3)(b), and 767.305 (1985–86), pointed specifically to Chapter 785, the new contempt chapter, as a means of enforcing orders to pay child support.

person is committing the contempt of court or 6 months, whichever is the shorter period." Section 785.04(1)(b), Stats.

*Larsen,* 165 Wis. 2d at 685 n.1 (emphasis added).

¶ 59. The elimination of an explicit purge condition in part of the statutes does not free a court from providing a contemnor with the "keys to the jail house door," *State ex rel. V.J.H. v. C.A.B.,* 163 Wis. 2d 833, 843, 472 N.W.2d 839 (Ct. App. 1991), but it does liberate the court from being paralyzed by semantics about the meaning of "purge condition" and "sanction."

¶ 60. Chapter 785 has been consistently interpreted to allow the circuit court to establish an alternate purge condition to purge a party's contempt. *See Benn v. Benn,* 230 Wis. 2d 301, 311, 602 N.W.2d 65 (Ct. App. 1999); *Diane K.J.,* 196 Wis. 2d at 969; *V.J.H.,* 163 Wis. 2d at 845 (quoting *State ex rel. Larsen v. Larsen,* 159 Wis. 2d 672, 676, 465 N.W.2d 225 (Ct. App. 1990), *aff'd,* 165 Wis. 2d 679, 478 N.W.2d 18 (1992)). An alternative "purge condition" may be the sanction authorized under Wis. Stat. § 785.04(1)(a) or (e), or it may be the "key to the jail house door" if the sanction imposed is imprisonment under Wis. Stat. § 785.04(1)(b). "With a remedial sanction . . . the contemnor's ability to avoid the sanction, through compliance with the original order or satisfaction of the purge condition, obviates the need for due process." *Diane K.J.,* 196 Wis. 2d at 970. Neither a "sanction" nor an "alternative purge condition" may be imposed if there is not a "continuing" contempt that requires a remedy. Satisfaction of an alternative purge condition terminates the continuing contempt of court.

¶ 61. In this case, the circuit court termed the $100,000 payment a remedial sanction. The $100,000 payment may also be construed as an alternative purge condition.

¶ 62. The circumstances make this case unusual in that full compliance with the court's order is impossible, and partial compliance with the court's order is ineffectual. Because Heidi and her children have already lost their traditional remedy, they cannot be made whole. Unless the court is able to fashion an alternative purge condition to compensate Heidi and the children for their loss, both Heidi and the court have been defeated.

¶ 63. The contempt statute allows the purge condition and the sanction to be the same. We acknowledge that in most circumstances, "[t]he purge condition contrasts with the sanction because it is a means for the contemnor to avoid the sanction by atoning for his or her past failure to obey the court's order." *V.J.H.*, 163 Wis. 2d at 845. However, when dealing with payment to compensate a party for a loss suffered as a result of contempt, it is possible for there to be a purge condition without a sanction or, in the alternative, for the purge condition to be the same as the sanction.

¶ 64. When a court decides to provide a purge condition outside of compliance with the original court order, several requirements must be met. "[T]he purge condition should serve remedial aims, the contemnor should be able to fulfill the proposed purge, and the condition should be reasonably related to the cause or nature of the contempt." *Larsen,* 165 Wis. 2d at 685.

¶ 65. These requirements are satisfied in this case. First, the purge condition serves remedial aims because it seeks to compensate Heidi for loss suffered as a result of Ronald's contempt of court. Second, Ronald is capable of fulfilling the proposed

purge.[20] Third, the purge condition is reasonably related to the cause or nature of the contempt so long as the 1996 stipulation is not enforceable.

¶ 66. If the 1996 stipulation were enforceable, it would be less evident whether the $100,000 purge condition is reasonably related to the cause of the contempt. As the court of appeals noted, if the 1996 stipulation is enforceable, Heidi was barred from seeking a change in support for four years based upon any increase in Ronald's income. *See Frisch,* 290 Wis. 2d 739, ¶ 31. If the 1996 stipulation were enforceable, Heidi would have suffered minimal or no loss or injury as the result of Ronald's contempt.[21]

---

[20] Ronald does not challenge the circuit court's findings that he has the ability to pay. The circuit court implicitly found that Ronald has the ability to pay stating, "[Ronald] has a substantial amount of holdings. It was reported that he owned lake property, recreational equipment ... but he is a man of some means, despite the representations he's made."

Later at the hearing on overtrial, the circuit court reaffirmed its finding that Ronald was a man of some means. It stated:

> Now, if I'm asked whether Mr. Henrichs has the ability to pay this amount [the overtrial award], previous testimony was very clear that I recall that there was at least a $125,000 loan from the corporation to Mr. Henrichs that had no ... plan for repayment. I recall a vacation home in northern Wisconsin, with boats and other recreational equipment. ... I think a substantial record has been made that he has ample funds available to him and has accumulated such funds over a long period of time and has invested in real estate and recreational ... equipment[,] ... he's got the money to pay it.

[21] If the 1996 stipulation were enforceable, Heidi would have suffered minimal loss because she could have sought modification of child support for the period of time after the stipulation's moratorium on January 1, 2001, until she lost placement of both children in November 2002.

33

¶ 67. We hold, however, that the 1996 stipulation, which set a ceiling on child support and prevented modification in the level of child support, is not enforceable and offends public policy. *See Ondrasek v. Tenneson,* 158 Wis. 2d 690, 692, 462 N.W.2d 915 (Ct. App. 1990) (holding that "a divorce stipulation that waives or sets a ceiling on child support and prevents modification of child support offends public policy"), *petition for rev. denied,* 465 N.W.2d 656 (1991).

¶ 68. A stipulation will be upheld if the parties entered into it freely and knowingly, and if "the overall settlement is fair and equitable and not illegal or against public policy." *See Rintelman v. Rintelman,* 118 Wis. 2d 587, 596, 348 N.W.2d 498 (1984). In this case, the circuit court found that the parties entered into the stipulation freely and knowingly; however, the circuit court concluded that the stipulation was against public policy and not in the best interests of the children. We agree and therefore conclude that the stipulation is unenforceable.

¶ 69. The stipulation in this case is similar to the stipulation in *Ondrasek.* In that case, the divorce stipulation established periodic payments from the husband to the wife, including spousal support, mortgage and contribution for real estate taxes, and child support. *Ondrasek,* 158 Wis. 2d at 692–93. The divorce stipulation provided that if the young son were to reside with the husband, the periodic payments would be reduced by $5000 per year. *Id.* at 693. In addition, neither party would have the right to have the amount of the periodic payments increased or decreased.[22] *Id.*

---

[22] The stipulation provided three exceptions: (1) the wife remarries and one or more children reside with her; (2) the

¶ 70. When the son came to live with the wife, the wife filed an order to show cause why the husband should not be required to pay child support. *Id.* at 694. The circuit court held that the wife was estopped from seeking child support payments because she had waived child support as long as she was receiving periodic payments. *Id.* The circuit court found the stipulation was enforceable and not against public policy. *Id.*

¶ 71. On appeal, the court of appeals noted that the stipulation allowed for two interpretations: either the wife completely waived child support as long as she received periodic payments, or the wife agreed to a child support ceiling of $5000 annually and waived any opportunity to modify the ceiling while she received periodic payments. *Id.* The court held that under either interpretation, the stipulation violated public policy because the wife could not seek modification of child support obligations and, therefore, the child's best interests were not adequately protected. *Id.*

¶ 72. In holding that the stipulation was against public policy, the court stressed that "[t]he paramount goal of the child support statute is to promote the best interests of the child and to avoid financial hardship for children of divorced parents." *Id.* at 695 (citation omitted). Therefore, "the child's best interests transcend an agreement or stipulation of the parties." *Id.* The court noted that the legislature has established this public policy in protecting the best interests of the child. *Id.* To illustrate, Wis. Stat. § 767.25(1) requires the circuit court to order necessary and reasonable child support when overseeing the dissolution of a marriage, and Wis.

wife's other income exceeds a certain amount; and (3) the husband becomes unable to work and his income falls below a certain amount. *Ondrasek v. Tenneson,* 158 Wis. 2d 690, 693 n.2, 462 N.W.2d 915 (Ct. App. 1990).

Stat. § 767.32(1) allows the circuit court to retain jurisdiction to modify a divorce judgment providing for child support. *Id.* In addition, although the circuit court is prohibited from modifying a waiver of spousal maintenance or a final division of property under Wis. Stat. § 767.32(1), the legislature did not create the same prohibition for child support. *Id.*

¶ 73. The court noted that "if a waiver or 'ceiling' of the entire child support obligation is deemed unmodifiable, the needs of a child could be left unsatisfied." *Id.* at 696. The court concluded with the following:

> Even if the stipulation was fair when it was created, making a child support provision unmodifiable does not necessarily make the stipulation fair in the future. Provisions preventing future determination of the best interests of the child may leave the child inadequately protected. Unforeseen changed circumstances may require support beyond the amount of waived or stipulated child support.
>
> Thus, the statutory goal of providing for the best interest of the child would be defeated if a party is precluded from seeking child support necessary for the best interests of the child. The public policy of protecting children requires that there be an opportunity to determine whether a change in circumstances warrants a modification of child support.

*Id.* at 696–97.

¶ 74. We agree with the court of appeals' reasoning in *Ondrasek*. In this case, the 1996 stipulation is unenforceable and against public policy because it set a *ceiling* on the amount of child support for four years of $1050 per month, and prevented Heidi from seeking a modification in child support, even if Ronald's income increased. The stipulation in this case and in *Ondrasek* are distinguishable from the stipulation in *Honore v.*

36

*Honore,* 149 Wis. 2d 512, 439 N.W.2d 827 (Ct. App. 1989), which set a *floor* on the amount of child support obligations for a limited period of time.[23]

¶ 75. In holding the 1996 stipulation contrary to public policy, we are sensitive to the importance and prevalence of stipulations in helping families going through difficult and litigious divorces and curbing disagreements among the parties. The ability to contract is fundamental to our legal system and may aid parties in settling their divorces more amicably. But the child's best interests are paramount.

¶ 76. A stipulation that sets a ceiling and bars any change in the maximum amount of child support defeats the statutory goal of providing for the child's best interests because parents are precluded from seeking a modification of an amount necessary for the child's best interests.

¶ 77. Therefore, because the stipulation was unenforceable and contrary to public policy, Heidi did suffer a loss as a result of Ronald's contempt because she could have sought modification of child support if she had known that Ronald's income had increased. As a result of Ronald's contempt and his failure to timely produce his tax returns, he evaded exposure to the possibility of child support modification. The circuit court concluded that if Ronald had been subject to child support obligations based on his true income, he would have paid an additional $222,000. The $100,000 purge condition is clearly related to Ronald's failure to timely produce his tax and income documents.

---

[23] Stipulating to a minimum amount for a limited period of time does not violate public policy because it ensures that a certain amount of child support is received, which is in the best interests of the children.

¶ 78. Contrary to Ronald's argument, the $100,000 purge condition is not an impermissible retroactive increase in child support under Wis. Stat. § 767.32(1m).[24] First, Wis. Stat. § 767.32(1m) prohibits retroactive increases in child support based on proceedings initiated under Wis. Stat. § 767.32(1). Proceedings under Wis. Stat. § 767.32(1) concern modification of child support based on a finding of substantial change in circumstances. The circuit court did not proceed under Wis. Stat. § 767.32(1); rather, the circuit court proceeded with the case under Wis. Stat. ch. 785 as a contempt proceeding and based on Ronald's contemptuous conduct of intentionally failing to provide Heidi with tax information.

¶ 79. Second, the $100,000 purge condition was not calculated based on forgone child support. The circuit court explicitly refused to order retroactive child support stating, "I cannot go back and recalculate. I can sanction him and compensate a party for a loss suffered as a result of contempt of court." The court then questioned the appropriate amount to award as a result of Ronald's contempt. The court had earlier considered that Heidi had "been the victim of fraud, blatant fraud," that Heidi had "assumed a disproportionate share of the child support obligations[,]" and that, if not for Ronald's

---

[24] Wisconsin Stat. § 767.32(1m) provides:

> In an action under sub. (1) to revise a judgment or order with respect to child support, maintenance payments or family support payments, the court may not revise the amount of child support, maintenance payments or family support payments due, or an amount of arrearages in child support, maintenance payments or family support payments that has accrued, prior to the date that notice of the action is given to the respondent, except to correct previous errors in calculations.

Wis. Stat. § 767.32(1m).

contemptuous conduct, Heidi could have "saved money, she could have invested money, . . . she could have saved money for the benefit of the children, [and] could have invested in a college fund for them." The court later concluded that it needed to sanction Ronald because if it did not do so, it would be allowing Ronald to "have his cake and eat it too" and would be rewarding Ronald for denying "his children the standard of living that was due and owing the children." Thus, the $100,000 purge condition is related to Heidi's and the children's loss suffered as a result of Ronald's contempt and is not an impermissible retroactive increase in child support.

¶ 80. Ronald also argues that Heidi had the burden to file a contempt motion in 1996–2001 in order to enforce compliance with the 1995 order and 1996 stipulation, and, because she did not do so, she should be estopped from doing so in 2003. We disagree that Heidi had the burden to file a contempt motion in 1996–2001. Ronald had the burden to comply with the 1995 order, and he risked being found in contempt for violating it. Furthermore, this is not a case where Heidi was silent until 2003 and did not make Ronald aware of her desire for the tax information. Rather, Heidi alleged that she made repeated requests to Ronald during 1996–2001 for the information.

## CONCLUSION

¶ 81. We reverse the court of appeals and hold that the circuit court properly employed remedial contempt in this case. Ronald's contempt was continuing at the time of the contempt hearing because, although he had provided Heidi with complete tax and income information at the time of the hearing, his failure to produce the information in a timely manner, as required, permitted him to evade exposure to the possi-

bility of a modification of his child support obligation and thereby deprived Heidi and their children of their traditional remedies under statutory law. The timely provision of information was an essential element of the court's order. Because Ronald could not and did not turn back time when he produced the required information too late to be acted on, his contempt was and is continuing within the legislative directive of Wis. Stat. § 767.27(2m). This continuing contempt in relation to Wis. Stat. § 767.27(2m) gave the circuit court authority to fashion an alternative purge condition of $100,000 to allow Ronald to purge himself of his continuing contempt.[25] We also conclude that the stipulation between the parties was unenforceable because it was not in the best interests of the children and therefore contrary to public policy.

¶ 82. Our holding promotes the intent behind the contempt statute, which is to provide the court with a mechanism, or toolbox, to effect compliance with court orders. *See Griffin,* 141 Wis. 2d at 708. Without such a tool, a parent could avoid his or her child support obligations by failing to provide court-ordered financial information for years and then complying at the last moment.

¶ 83. We therefore reverse the court of appeals and affirm the circuit court, which ordered Ronald to pay Heidi a sum of $100,000 for loss suffered as a result of Ronald's contempt and $32,000 in attorney fees for Ronald's overtrial.[26]

---

[25] Satisfaction of an alternative purge condition terminates the continuing contempt of court.

[26] The court of appeals reversed the circuit court's overtrial award based on its conclusion that the overtrial award was

*By the Court.*—The decision of the court of appeals is reversed.

¶ 84. LOUIS B. BUTLER, JR., J. *(concurring).* I concur in the mandate. The circuit court got it right. I write separately because the majority opinion does violence to the law of remedial contempt when application of accepted principles of contempt law will do. In my view, the majority opinion distorts beyond recognition the meaning of "continuing contempt" under Wis. Stat. § 785.01(3) by holding that a failure to meet a deadline constitutes a "continuing contempt" of court.

¶ 85. The majority reads the circuit court's order of contempt as being based solely on the failure of Ronald Henrichs (Ronald) to provide annual income tax returns for the years covered by the parties' stipulation.[1] However, the circuit court's findings indicate its order of contempt was based not only on Ronald's past

premised on the circuit court's contempt finding against Ronald. *Frisch,* 290 Wis. 2d 739, 37. However, because we affirm the circuit court's contempt finding against Ronald, we also reinstate the $32,000 overtrial award.

[1] This certainly was a reason for the circuit court's finding of contempt. Another reason is given in the court's January 19, 2005, written decision, which states that the contempt was ordered "also for [(Ronald)] failing to notify the court and Heidi [Frisch] of substantial changes in his income as ordered and as required by statute section 767.27." And both of these reasons come under the broader heading of Ronald's long-standing efforts to conceal his income from Heidi and the circuit court, as indicated by numerous findings and conclusions of the circuit court. *See infra,* ¶¶ 102–107. The argument that the contempt order was made in response to Ronald's repeated and continuing efforts to conceal his income was made by Heidi in her briefs to this court and the court of appeals.

The court of appeals' opinion improperly forces the circuit court's multiple findings regarding the broad nature of Ronald's

41

failure to provide these returns, but also on his on-going efforts to conceal his income and financial holdings, which continued up though the conclusion of the proceedings before the circuit court. Because the circuit court's findings show that Ronald's contempt was truly "continuing," a straightforward application of Wis. Stat. § 785.01(3) is all that is required, and the majority's tortured interpretation of "continuing contempt" is wholly unnecessary.

I

¶ 86. The procedural history of this case is long and complex and need not be related in detail again here. For purposes of this concurrence, I adopt the facts as set forth in the majority's opinion, and I supplement those facts with additional findings of the circuit court as described below. I provide only those facts that are relevant to the reasons for the circuit court's order of contempt.

¶ 87. At hearings before the circuit court on January 8, 2003, and May 20, 2003, regarding Heidi Frisch's (Heidi) motion to compel discovery, Ronald testified about income he received and assets he owned, as well as his status as president and treasurer of Henrichs Builders, Inc. References made at the May 20 proceeding indicate that Ronald's attorney had provided supplemental income information to Heidi, including previously withheld W-2s. The circuit court made numerous findings subsequent to receiving and considering this addi-

contempt under the narrow heading of failing to provide income tax information from 1996–2001, stating as follows: "Ronald's contempt was his failure to furnish accurate income information *by way of* timely produced copies of tax returns." *Frisch v. Henrichs,* 2006 WI App 64, ¶ 30, 290 Wis. 2d 739, 713 N.W.2d 139 (emphasis added). This was not the ruling of the circuit court.

42

tional information that are relevant to the contempt finding it ultimately rendered.

¶ 88. On January 19, 2005, the Waukesha County Circuit Court, Honorable Ralph Ramirez, issued its written findings of fact, conclusions of law and judgment that formalized the findings and conclusions of the court issued during motion hearings dating from July 2002 to June 2004. The written findings note that in August 2002 Heidi brought a pro se motion seeking to hold Ronald in contempt for his continuing failure to provide evidence of his income by annual tax returns. *See also* majority op., ¶ 12. Finding number 13 states that at a September 24, 2002, hearing on Heidi's motion, Ronald provided only *"partial* personal tax returns and *some* of the tax returns relating to one of his corporations." (Emphasis added.)

¶ 89. The circuit court's findings note that Heidi moved to vacate a child support order and Ronald responded by moving to modify placement of the couple's minor son. In a November 25, 2003, oral ruling on these motions based upon testimony it received at hearings on January 8, 2003, May 20, 2003, and November 6, 2003,[2] the circuit court made the following finding, later memorialized in the court's January 19, 2005, findings:

> There has been substantial misrepresentation on Ronald's part since the Stipulation was entered. Ronald

---

[2] At the November 6, 2003, hearing the circuit court found that Ronald was "constantly evasive [and] nonresponsive" in his testimony. The court also made findings with regard to Ronald's efforts to conceal income in his business: "[T]he Court's going to find that his credibility is highly questionable, and that there's been ample evidence to indicate that he has used corporate income, testimony was received" about a recreational property held by Ronald's construction company. The circuit court found that "the assertion that the property . . . is used for business purposes is not just suspect, but totally devoid of any credibility."

has been substantially evasive and not truthful in regard to his income, his income available to him and the assets available to him for imputing income and his gross income which includes the undistributed income of the corporation.

¶ 90. At the November 25, 2003 hearing, the court found that since the 1996 stipulation,

[s]ubstantial information has been set out on the record that . . . given the machinations of [Ronald], the establishment of the holding company, the payments, loan payments and supplying of a lake home, a vacation home and other toys through the company, that [Ronald] was hiding substantial assets in the course of doing business.

The circuit court then stated it was "convinced that [Ronald] has played a game for a long time in regards to what his actual income and cash available to him is." The circuit court declared that while it did not believe that the 1996 stipulation was obtained by fraud, it was "convinced that there has been substantial—a substantial amount of misrepresentation and fraud on the part of [Ronald] since that time . . . ." Later in the same hearing, the circuit court reiterated that "there was a substantial amount of misrepresentation by [Ronald] . . . established on the record." The court indicated that it was convinced that Ronald's accountant, Mr. Nyholm, was "incorrect" in his "assessment of income available to [Ronald] and what was personally available to him." The court was convinced "that [Ronald] has been substantially evasive and not truthful in regards to his income, his income available to him and the assets available for imputing income and his gross income, which includes the undistributed income of the corporation."[3]

---

[3] At the October 22, 2003 hearing, the judge observed "[t]hat [Ronald's] demeanor throughout the course of these

¶ 91. The circuit court's written findings of fact show that at a June 15, 2004, hearing the court found that Ronald "has not in any way complied with the requirement to provide income information," and "is in contempt of court for not supplying his income information as ordered." The findings further state that

Ronald grossly and inappropriately hid his income and took affirmative actions to make certain that it was not available for the computation of child support. Ronald avoided reporting income for the purpose of avoiding child support to the children, not to Ms. Frisch but to the children, that he made deliberate and intentional efforts to hide his income.

The transcript of the June 15, 2004, hearing contains additional findings of the circuit court. With regard to Ronald's credibility, the circuit court stated it was "extremely negatively impacted by the testimony of [Ronald]," and reiterated its prior findings that Ronald's "testimony concerning his income lacked credibility." It further stated:

[I]f I look at the criteria for assessing credibility, the in—the demeanor of a person, the ability to recall things, the way that a person presents him or herself, the ability and opportunity to know something, [Ronald] failed on many, many, many of those counts.

He had a selective memory, was evasive, not able to give straight answers. And that plays into the fact that throughout the course of these proceedings and during the course of testimony when I heard about depositions as well, any information from [Ronald] is suspect. It's 4:16 on a lovely summer day. If [Ronald] told me it was

proceedings . . . and his response to direct questions has been previously evasive, elusive, nonresponsive and tested both the Court and the person to whom is asking the questions."

daylight and sunny out, I'd have to check my watch and I'd have to look out the window.

¶ 92. At the June 15, 2004, hearing the court stated that it was "asked to find [Ronald] in contempt for his failure to provide income information," and that it was "asked to take some action as to dealing with the alleged failure to do so, and it's been established definitively in this Court's mind that [Ronald] misrepresented his income . . . ." The circuit court discussed Ronald's income for the years of the stipulation, 1996–2001, and for 2002 as well. The circuit court referred to a recreational property owned by Ronald's closely-held corporation, and a loan paid by the corporation to Ronald. The circuit court then found that Ronald "grossly and inappropriately hid his income and took affirmative actions to make certain that it wasn't available for the computation of child support."

¶ 93. The circuit court also found at the June 15, 2004, hearing that Ronald "did not provide basic W-2 income or tax filing information appropriately as required previously, that he did not as obligated report changes in income or truthfully report income for the entire amount of time from 1996 on . . . ."

¶ 94. Later, at a hearing on November 12, 2004, the circuit court stated that the "issue has been from Day One the allegations on the part of—from [Heidi] alleging that [Ronald] had in essence hid funds or had made representations that were untruthful in regards to funds available to him, income available for the purpose of paying child support. And, again, I have made an extensive record in the past as to my findings." The court further concluded that "[Ronald] was dishonest and that his income was quite a bit more substantial than he reported to [Heidi] for purposes of paying child

support. And as a result of that, there was an enormous amount that . . . [Heidi] was denied on behalf of the minor children as support."

¶ 95. The circuit court's January 19, 2005, formal conclusions of law state that

> Ronald has engaged in overtrial with respect to his efforts to evade an accurate calculation of his income and he is in contempt for failing to provide tax returns as ordered and also for failing to notify the court and Heidi of substantial changes in his income as ordered and as required by statute section 767.27.

The circuit court also concluded that its order imposing a monetary penalty on Ronald was a "contempt sanction" that was "required as a remedy for Ronald['s] contemptuous, deliberate and willful failure to provide the court and the petitioner with truthful information about his actual income."

## II

¶ 96. The majority opinion's statement of the standard of our review is legally correct, as far as it goes. I agree that the question of whether a circuit court has the authority to issue a contempt order in a given case is a question of law that we review de novo. *See* majority op., ¶ 29.

¶ 97. However, as the analysis below concludes, the authority of the circuit court to make a contempt order is not at issue under the facts as found by the circuit court. Because I conclude that the circuit court had authority to issue an order of contempt in this case, I review the circuit court's order to determine whether it properly exercised its discretion in issuing the order. *See City of Wisconsin Dells v. Dells Fireworks, Inc.,* 197 Wis. 2d 1, 23, 539 N.W.2d 916 (Ct. App. 1995).

47

## III

¶ 98. Chapter 785 of the Wisconsin Statutes codifies the power of a court to issue orders of contempt. The chapter defines "contempt of court" as "[m]isconduct . . . which interferes with a court proceeding or with the administration of justice, or which impairs the respect due the court," and includes "[d]isobedience, resistance or obstruction of the authority, process or order of a court," and "[r]efusal to produce a record, document or other object." Wis. Stat. § 785.01(1)(a), (b) and (d).

¶ 99. A " '[r]emedial sanction' means a sanction imposed for the purpose of terminating a continuing contempt of court." Wis. Stat. § 785.01(3). The court of appeals' decision below correctly stated that "[a] remedial, or civil, sanction . . . is imposed to ensure compliance with court orders for the purpose of terminating a continuing contempt of court." *Frisch v. Henrichs,* 2006 WI App 64, ¶ 27, 290 Wis. 2d 739, 713 N.W.2d 139; *see also In the Interest of D.L.D.,* 110 Wis. 2d 168, 179, 327 N.W.2d 682 (1983).

¶ 100. The majority opinion includes a thorough discussion of the legal background of Chapter 785, with which I have no quarrel. *See* majority op., ¶¶ 31–37. The problems with the majority's analysis begin with its narrow focus on Ronald's failure to provide copies of income tax returns for the period covered by the stipulation, 1996–2001. Based on this narrow focus, the majority attempts to shoehorn the concept of "continuing contempt" under Wis. Stat. § 785.01(3) to fit its view of the facts. To this end, the majority concludes as follows: "Although Ronald did produce all the required documents before the circuit court found him in contempt, his contempt was continuing under Wis. Stat. § 767.27(2m) because his production of documents came

too late to undo the problems he had created by failing to produce documents on time." Majority op., ¶ 47. Thus, the majority concludes a person who misses a deadline for submitting a document is in "continuing contempt," even after he or she submits the requested document. The majority reasons: "The contempt was continuing because Ronald's failure to comply with the court order deprived Heidi of her ability to utilize traditional remedies in the law. Thus, we cannot agree with the court of appeals that when Ronald turned over the tax documents, 'any prior contempt' was no longer ongoing.'" Majority op., ¶ 47 (citing *Frisch,* 290 Wis. 2d 739, ¶ 30).

¶ 101. If the contempt order in this case were issued merely because Ronald failed to provide copies of income tax documents for the period covered by the stipulation, I would agree with the court of appeals' analysis of Wis. Stat. § 785.01(3). Under such a circumstance, once the tax documents for the years 1996–2001 were turned over, the contempt would no longer be "continuing." The majority's contrary definition of "continuing" invents a new legal fiction to reach a desired outcome. As a result, another law, the law of unintended consequences, is likely to impact future cases involving contempt orders issued under § 785.01(3).

¶ 102. However, the factual findings of the circuit court demonstrate that the order of contempt was not based exclusively on Ronald's failure to provide income tax documents for the years 1996–2001. Both the court of appeals and the majority are locked in to a narrow and incorrect view of the factual basis for the circuit court's order that impacts their respective analyses.

¶ 103. The circuit court's findings show that the contempt order was based on findings that Ronald had hidden and was hiding relevant information from Heidi and the court about his income. Ronald's failure to

provide income tax documents for the years 1996–2001 as required by the stipulation was an important part of this pattern of deception. However, it was but one example of his efforts to conceal financial information from Heidi and the court, the "game playing" the circuit court found Ronald engaged in up to the date of the order of contempt.

¶ 104. The circuit court's January 19, 2005, written order and several bench rulings are replete with findings that Ronald had concealed information about his income from Heidi and the circuit court both during the period of the stipulation and after. At the November 25, 2003, hearing, the circuit court found substantial misrepresentation on Ronald's part since the stipulation had been entered. The circuit court found Ronald to be "substantially evasive and not truthful in regard to his income, his income available to him and the assets available to him for imputing income and his gross income, which includes the undistributed income of the corporation." These deceptions are clearly separate from Ronald's failure to provide income tax documents during the period of the stipulation.

¶ 105. At the same hearing, the circuit court then stated it was "convinced that [Ronald] has played a game for a long time in regards to what his actual income and cash available to him is." We note the verb tense of these statements indicates the court found Ronald's evasiveness to be on-going as of the November 25, 2003 hearing.

¶ 106. In the context of seeking to ascertain Ronald's actual income, the court made numerous findings regarding Ronald's credibility and truthfulness. At various times, the court found Ronald to be "constantly evasive," "not truthful" and "lack[ing] credibility." At the June 15, 2004, hearing the circuit court found Ronald's "testimony concerning his income lacked credibility." It

50

gave the following assessment of Ronald, not in the context of his failure to provide income tax documents to Heidi during the period of the stipulation, but for his *continuing* evasiveness in the proceeding before the court:

> [I]f I look at the criteria for assessing credibility, the in—the demeanor of a person, the ability to recall things, the way that a person presents him or herself, the ability and opportunity to know something, [Ronald] failed on many, many, many of those counts.
>
> He had a selective memory, was evasive, not able to give straight answers. And that plays into the fact that throughout the course of these proceedings and during the course of testimony when I heard about depositions as well, any information from [Ronald] is suspect. It's 4:16 on a lovely summer day. If [Ronald] told me it was daylight and sunny out, I'd have to check my watch and I'd have to look out the window.

¶ 107. A review of the circuit court's ample findings demonstrates that the circuit court did not base its order of contempt on the failure to provide income tax documents from 1996–2001, but for a pattern of evasiveness (of which failure to provide said documents was a part) that continued into the proceedings before Judge Ramirez. The circuit court's January 19, 2005, conclusions of law demonstrate that the circuit court itself viewed the basis for the order of contempt in this manner. The court concluded Ronald had engaged in "overtrial with respect to his efforts to evade an accurate calculation of his income." The circuit court also concluded that its order imposing a monetary penalty on Ronald was a "contempt sanction" that was "required as a remedy for Ronald['s] contemptuous, deliberate and willful failure to provide the court and the petitioner with truthful information about his actual income."

51

¶ 108. Because the circuit court's order of contempt was based on its findings that Ronald was in continuing contempt for failure to provide truthful information to Heidi and the court about his actual income, and not just for the failure to provide Heidi with income tax documents during the period of the stipulation, I conclude that this case involves a straightforward application of a circuit court's authority under Wis. Stat. § 785.01 to issue a remedial contempt order. I further conclude that the circuit court here applied the correct legal standard and reached a reasonable result, and would therefore affirm its entry of a contempt order as a proper exercise of its discretion. *See Landwehr v. Landwehr*, 2006 WI 64, ¶ 7, 291 Wis. 2d 49, 715 N.W.2d 180.

¶ 109. For the forgoing reasons, I respectfully concur.

¶ 110. I am authorized to state that Justice ANN WALSH BRADLEY joins this concurring opinion.

¶ 111. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Members of the court obviously disagree in interpreting the record. I would retain jurisdiction of the cause and remand the matter to the circuit court to advise this court whether, as a matter of fact, Ronald Henrichs provided all the information the circuit court required. I would also ask the parties to brief whether the circuit court had the power to enter the order it did (regardless of whether Ronald Henrichs provided all the information) under Wis. Stat. § 805.03 without resort to remedial contempt.

¶ 112. For the reasons set forth, I dissent.